**NORTH PARK CINEMAS, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 82T10–9609–TA–00106.

Tax Court of Indiana.

Dec. 5, 1997.

G. Michael Schopmeyer and Martha J. Posey, Kahn, Dees, Donovan & Kahn, Evansville, for Petitioner.

Jeffrey A. Modisett, Attorney General, Angela L. Mansfield, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

North Park Cinemas, Inc. (North Park) appeals a final determination of the State Board of Tax Commissioners (State Board) removing North Park's obsolescence depreciation adjustment. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (repealed 1995) (codified in present form at IND. ADMIN. CODE tit. 50, r. 2.2–10–7 (1996)). This Court AFFIRMS the final determination of the State Board.

## FACTS AND PROCEDURAL HISTORY

This case originates with the 1989 general reassessment of North Park's property. The property consists of a movie theater complex located in Vanderburgh County, Indiana known as Showplace East Cinemas. After the 1989 reassessment, North Park filed a Form 130 Petition for Review with the Vanderburgh County Board of Review (BOR) seeking an obsolescence depreciation adjustment due to its property's seasonal and singular use as a movie theater. The BOR granted a 25% obsolescence depreciation adjustment for the property on April 26, 1991. Four days later, Cheryl Musgrave (Musgrave), then a member of the BOR, filed a Form 131 Petition for Review of Assessment with the State Board asking for a review of the BOR's determination. *See* IND.CODE ANN. § 6–1.1–15–3(b) (West 1989) (amended 1993 & 1997) (allowing a member of a county board to seek review of any assessment he has made, on which he has passed, or which was made over his protest). Musgrave claimed that North Park's building was a "newer" building that was being used for its

intended purpose as a movie theater. Therefore, North Park was not entitled to any adjustment.

A State Board hearing was scheduled for July 15, 1992. Notice of this hearing was sent on July 3, 1992 to the owner of North Park. At the hearing, Musgrave simply argued that there was "no evidence given for ... the obsolescence" before the BOR. (Pet'r Ex. 2). North Park's owner did not appear at this hearing. He testified at trial that the Vanderburgh County Assessor told him he did not need to attend because his interests would be represented by a deputy county assessor. The Deputy Assessor of Vanderburgh County ("Joest") did appear and presented evidence that obsolescence depreciation adjustments had been given to other businesses in the area. She presented no documentary evidence and did not disclose whether other theaters had been given obsolescence depreciation adjustments.

Mr. Steve Folz (Folz), a deputy assessor for Knight Township, testified at the hearing that he "worked [at the theater] for four years." (Pet'r Ex. 2). Folz also testified that "they're aware of that they're not going to get much business on the weekdays.... They know that when they go into business." *Id.*

The hearing officer contacted North Park's owner, toured and inspected the theater, and later mailed him a copy of her proposed recommendation. The hearing officer gave North Park ten additional days to make a statement or provide evidence in support of its position. It did not. The hearing officer forwarded her recommendations to the State Board. On July 26, 1996, four years later, the State Board issued its final determination stating that the obsolescence depreciation adjustment was unjustified and therefore removed. On September 6, 1996, North Park filed this original tax appeal. A trial was held before this Court on June 20, 1997. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives the decisions of the State Board great deference when the State Board acts within the scope of its authority. *Bender v. State Bd. of Tax Comm'rs,* 676 N.E.2d 1113, 1114 (Ind. Tax Ct.1997). Final determinations by the State Board are therefore only reversed by this Court when the decision is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *Id.* at 1113-14.

Before addressing the arguments made by North Park, the Court will resolve a preliminary evidentiary question. At trial, North Park offered into evidence the property record cards of other theaters in the Evansville area. The State Board objected to the admission of this evidence because it was not offered at the State Board hearing. *See State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324 (Ind.Ct.App. 1981) (holding that only exhibits offered before the State Board may be offered before the reviewing court). This Court accepted the evidence subject to a post-trial ruling on its admissibility.

■ Tax Court proceedings are governed by the law in effect prior to the creation of the Court with respect to evidence that it may consider in its final review of State Board determinations. *See* IND.CODE ANN. § 33-3-5-14 (West 1996). The law in effect prior to this Court's creation was clear. A reviewing court must "go no further than to examine the propriety of the agency's facts as the agency found them." *Gatling Gun,* 420 N.E.2d at 1328. In addition, other than the hearing officer, "only those witnesses who testified at the board's hearing may testify at the judicial review hearing, and they may testify only to those facts to which they testified at the board's hearing." *Id.* "Similarly, *only those exhibits introduced at the board's hearing may be introduced on judicial review.*" *Id.* (emphasis added). Armed with *Gatling Gun,* the State Board objected to the proposed admission of the property record cards at trial because they were not introduced before the State Board.

North Park attempts to defeat the State Board's objection by arguing that the proper-

ty record cards are probative of a violation of Article X, Section 1 of the Indiana Constitution and are therefore admissible even though not introduced before the State Board. (Pet'r Post–Trial Br. at 6); (Tr. at 29). North Park argues that the State Board's denial of its obsolescence depreciation adjustment does not result in a uniform and equal rate of assessment because other theaters in Vanderburgh County receive as much as a 65% adjustment. Further, North Park argues that the State Board does not posses either the authority or the ability to decide constitutional issues and, therefore, presentation of the property record cards before the State Board would be pointless.

One of the underlying rationales of *Gatling Gun* is that this Court "would intrud[e] upon the discretionary authority of the [State Board]" if it considered evidence not presented to the State Board. *American Juice Co. v. State Bd. of Tax Comm'rs*, 527 N.E.2d 1169, 1170 (Ind. Tax Ct.1988) (quoting *Gatling Gun*, 420 N.E.2d at 1328). However, in instances where the character of the question presented is beyond the competency, expertise, or authority of the particular agency, this rationale has little force. *Cf. Bielski v. Zorn*, 627 N.E.2d 880, 887 (Ind. Tax Ct.1994) (no need to present claim at administrative level when question is beyond agency's competence, expertise, or authority).

■ North Park's argument is based on the theory that the State Board's actions violate the uniform and equal clause of the Indiana Constitution. The State Board is statutorily required to ensure uniformity and equality in assessments. *See* IND.CODE ANN. §§ 6–1.1–2–2, 35–1 (West 1989); *see also Bielski*, 627 N.E.2d at 885; *State Bd. of Tax Comm'rs v. McDaniel*, 199 Ind. 708, 716, 160 N.E. 347 (1928) ("It will not be doubted that the State Board of Tax Commissioners is a creature of the people through legislative enactment as an administrative agent to aid in the gaining for the whole people a uniform and equal rate of assessment and taxation."). The character of this constitutional question is therefore not beyond the State Board's competency, expertise, or authority to decide. A challenge based on a lack of uniformity and equality of assessment, as well as any

supporting evidence, should have been presented to the State Board. It was not. Consequently, this Court will not allow the property record cards into evidence.

■ North Park also argues that the exhibits are "not being entered for the purpose of new evidence as proscribed under Gatling Gun. These exhibits are being entered to establish that the State Board was arbitrary and capricious in [its] overturning of the Vanderburgh County Board." (Tr. at 9). This argument misses the mark. The review of agency decisions to ensure they are not arbitrary and capricious involves a review of only those facts presented before the agency. *Gatling Gun*, 420 N.E.2d at 1328–29. "If evidence not presented to the board were admissible on judicial review, the court sitting in review would have to weigh the evidence and draw its own conclusions thereon. The court would then be intruding upon the discretionary authority of the board." *Id.* North Park's attempt to introduce the property record cards before this Court is exactly the type of conduct that *Gatling Gun* is designed to prohibit. The State Board's objection to the introduction of the property record cards is SUSTAINED.

## Discussion

North Park presents four arguments. First, North Park argues that because Musgrave initiated the petition for review to the State Board, she bore the burden of proof before the State Board to show that the BOR's granting of the obsolescence reduction was erroneous. North Park claims Musgrave did not meet this burden. Second, North Park argues that the State Board bears the burden of proof at this Court to show that its removal of the obsolescence depreciation adjustment was correct—a burden the State Board has not met. Third, North Park argues that if it carried the burden of proof before the State Board or this Court, North Park has met its burden by proving that the State Board's actions were unsupported by substantial evidence and arbitrary and capricious. Finally, North Park argues that the removal of the obsolescence depreciation adjustment results in a violation of the Indiana Constitution's uniformity and

equality requirement. *See* IND. CONST. art. X, § 1(a).

## I. BURDEN OF PROOF BEFORE THE STATE BOARD

North Park claims that Musgrave bore the burden of proof before the State Board to show that the BOR's granting of the obsolescence depreciation adjustment was in error. North Park also argues that Musgrave failed to meet this burden.

It is important to note that the State Board has promulgated no rules regarding who bears the burden of proof in cases such as this. The State Board is free to do so. *See* IND.CODE ANN. § 6–1.1–31–1(b) (West 1989). However, the inquisitory nature of State Board proceedings eliminates the need for such a rule.

Inquisitorial proceedings are those where the presiding officer assumes an active role in the development of the case. *See* BERNARD SCHWARTZ, ADMINISTRATIVE LAW § 5.29, at 261–62 (2d ed. 1984). State Board proceedings are inquisitorial in nature. In those proceedings, the hearing officers review property assessments. *See* IND.CODE ANN. § 6–1.1–30–11 (West 1989) (amended 1997, effective 1999). In doing so, they generally question witnesses, accept evidence, and investigate the subject property. The evidence presented at a State Board hearing is a means of bringing pertinent facts and information to the attention of the hearing officer. The State Board's hearing officer may supplement the evidence presented by conducting her own investigation regarding the issue involved. This allows the hearing officer the ability to collect and investigate evidence that the parties may not have presented. The hearing officer considers the evidence and makes a recommendation to the State Board based on an application of rules and statutes to that evidence.[1] This function does not change regardless of how the case comes before the State Board. A rule establishing an evidentiary burden of proof before the hearing officer would have little practical effect. Even if a particular party bears the burden of proof, the hearing officer could, in effect, satisfy the burden on behalf of that party through a thorough investigation.

However, a hearing officer does not have an affirmative duty to make a case on behalf of a party. A party who stands to be adversely affected by a petition for review has an obvious responsibility to appear before the State Board and present evidence and argument in support of its position. This should be done, if for no other reason, to preserve the ability to present evidence to this Court on appeal. *See Gatling Gun*, 420 N.E.2d 1324. This Court will not fabricate a rule placing the burden on Musgrave simply to save North Park from its failure to present evidence before the State Board.

Even if there were a rule allocating the burden of proof to Musgrave, this Court would still review a final determination of the State Board to determine whether it is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *Bender*, 676 N.E.2d at 1113–14. The standard of review has been satisfied in this case. North Park received sufficient notice of the State Board hearing. *See* IND.CODE ANN. § 6–1.1–15–4(a) (West Supp.1997). Musgrave appeared and presented an argument. Folz's testimony supported her argument. Joest, the deputy county assessor, presented some argument on North Park's behalf. The hearing officer investigated the property and discussed her findings with North Park's owner. In addition, the hearing officer allowed North Park an opportunity to supply further evidence in support of its position. North Park had ample opportunity to present evidence to the hearing officer. There is sufficient evidence and process here to satisfy this Court's standard of review. Holding that Musgrave or North Park bore the burden of proof would not change this result.

The Court appreciates North Park's concern that it has been forced to defend an assessment, with which it agreed, because of the actions of a third party. However, there are protections for taxpayers when a member of the BOR appeals to the

---

1. The hearing officer and the State Board are required by statute to ensure that property assessments are made in accordance with law. *See* IND.CODE ANN. § 6–1.1–35–1.

State Board. First, any final determination by the State Board that is not supported by substantial evidence or is arbitrary and capricious will be overturned if appealed to this Court. Further, the statutory right of a BOR member to appeal comes with responsibility. *Cf. Williams Indus. v. State Bd. of Tax Comm'rs,* 648 N.E.2d 713 (Ind. Tax Ct.1995) (holding that taxpayer's right to challenge property's valuation is attached to certain responsibilities). The language of section 6–1.1–15–3(b) allows a BOR member the right to petition for review of an assessment he has made, on which he has passed, or an assessment made over his protest. The section is designed to be used in good faith. A BOR member petitioning the State Board must make a good faith showing that there is a proper reason for making the petition. This Court is confident that the State Board would summarily affirm the BOR were an appeal brought by one member for no purpose but to harass the taxpayer. If the State Board did not do so, this Court would. Musgrave gave a proper reason for petitioning for review. She did not believe the regulations allowed North Park an obsolescence depreciation reduction. The hearing officer properly investigated her claims and determined that she was correct. This Court will not alter the State Board's final determination based on an argument that Musgrave was required to prove that North Park was not entitled to the obsolescence depreciation reduction.

## II. Burden of Proof Before the Tax Court

■ North Park's next argument is that the State Board bore the burden of proof before this Court, which it failed to meet. North Park correctly observes that the party appealing an administrative decision bears the burden of proof before this Court. *Meridian Hills Country Club v. State Bd. of Tax Comm'rs,* 512 N.E.2d 911, 913 (Ind. Tax Ct.1987). However, North Park makes an extraordinary leap of logic

with its next contention. North Park states that taxpayers initiate challenges before the County Boards and because taxpayers generally bear the burden of proof before this Court, the determination of who bears the burden of proof before this Court must be related to who originally challenged the BOR determination. In this case, that person is Musgrave. North Park continues, arguing that the State Board now bears the burden of proof before this Court because it "stepped into Musgrave's shoes by adopting her contention as its final determination." (Pet'r Br. at 3). To say that this argument strains credulity would be doing it a great justice. The State Board's final determination is an administrative ruling. North Park, as a party appealing an administrative decision, consequently bears the burden of proof at this Court.

## III. The Final Determination of the State Board

■ North Park's third argument is that even if it is required to go forward with the evidence, it has shown that the State Board's final determination is arbitrary and capricious and not supported by substantial evidence. North Park is incorrect.

North Park did not appear before the State Board to present evidence. North Park's absence was apparently due to the assertions of Mr. Angermeier, the Vanderburgh County Assessor at the time. Mr. Angermeier told North Park that it would be "represented" by the Deputy County Assessor, Joest.[2] Joest appeared "on behalf of North Park." (Pet'r Br. at 5). Joest presented evidence to the hearing officer that an obsolescence depreciation reduction was given due to the fact that the theater was "seasonal." In short, at certain times of the day, week, and year, business was not as good as it was at other times. Joest also stated that other businesses in the area received obsolescence depreciation reductions due to the seasonal nature of their busi-

2. To rely on a public official for representation is risky at best and creates a potential for myriad conflicts of interest. Further, the Court does not condone Mr. Angermeier's actions in this case. However, any problems created by Mr. Anger-

meier's assertions were cured by the hearing officer's tour of the theater and the opportunity she gave North Park to provide additional evidence.

nesses. After this testimony, the hearing officer, accompanied by the owner, visited the theater and toured the facility. The hearing officer mailed North Park's owner her proposed findings denying North Park an obsolescence depreciation reduction. The hearing officer gave North Park ten days to provide additional evidence regarding obsolescence. North Park did nothing.

After the hearing officer's proposed findings were presented to the State Board, four years passed without a final determination. North Park made no effort to appeal to this Court. *See* IND.CODE ANN. § 6–1.1–15–4(e) (West Supp.1997). After the State Board issued its final determination, North Park appealed to this Court and offered into evidence the property record cards of other theaters in the area. As noted above, this evidence is not admissible before this Court based on *Gatling Gun.* There is simply no evidence presented by North Park to show that the final determination of the State Board was incorrect. In light of the hearing officer's investigation, and the lack of substantive evidence presented by North Park before the State Board, this Court cannot find that North Park has demonstrated that the final determination of the State Board is arbitrary, capricious, or unsupported by substantial evidence.

IV. UNIFORMITY AND EQUALITY

Finally, North Park argues that a denial of an obsolescence depreciation reduction results in a violation of the requirement of a uniform and equal rate of property assessment and taxation. *See* IND. CONST. art. X, § 1(a). North Park's claim is that other theaters in the area are granted obsolescence depreciation reductions and therefore North Park is entitled to the same.

The State Board argues that it has no responsibility to compare similar properties when making an assessment. To support this proposition, the State Board cites the following portion of *Meridian Hills:* "There is no requirement that the State Board review all like property within a locality. In fact, 'the State Board is to have nothing to do with individual assessments except by appeal.'" *Meridian Hills,* 512 N.E.2d at 913

(quoting *Bell v. Meeker,* 39 Ind.App. 224, 231, 78 N.E. 641, 643 (1906)).

■ The Court notes that *Meridian Hills* has never been cited in support of the proposition that the State Board asserts. The language quoted from *Meridian Hills* confirms that the State Board cannot summarily raise or lower the assessments of other properties brought to its attention by a taxpayer. Taxpayers regularly offer property record cards of comparable properties to support a claim that their own property is wrongly assessed. The assessments of these comparison properties can only be altered after proper procedure and process are followed by the State Board. *See Mills v. State Bd. of Tax Comm'rs,* 639 N.E.2d 698, 701 (Ind. Tax Ct.1994). The State Board's argument is inconsistent with the constitutional command of uniformity and equality of property taxation as well as recent authority. *See Western Select Properties v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1075 (Ind. Tax Ct.1994); *see also Harrington v. State Bd. of Tax Comm'rs,* 525 N.E.2d 360, 362 (Ind. Tax Ct.1988) (State Board must consider evidentiary value of assessment of like property even though State Board did not review assessment of that property). The State Board is required to compare similar properties when such evidence is proffered by a taxpayer seeking review of his assessment. *Bielski,* 627 N.E.2d at 885. The State Board cannot discharge its duty to assess similar properties consistently without considering evidence proffered by the taxpayer that similar properties were assessed differently.

■ None of this should be read to relieve the taxpayer of its duty to bring forth evidence to the State Board showing that similar properties have been treated inconsistently. As this Court stated in *Western Select,* "the taxpayer ... must present some *evidence of probative value to support its claim* that its property has been assessed inconsistently with similar properties." *Western Select,* 639 N.E.2d at 1075 (emphasis added). Given this Court's standard of review and *Gatling Gun,* a taxpayer who does not present evidence of similar properties

assessed differently cannot complain to this Court that the State Board failed to consider similar properties. It is not the duty of the State Board to make the taxpayer's case. North Park did not present evidence of similar properties. (Instead, Joest merely asserted an unsupported claim that other theaters were assessed differently.) This Court will not hold that the State Board failed in its duty to ensure uniform and equal assessments.

## CONCLUSION

For the foregoing reasons, the final determination of the State Board is AFFIRMED.