**CDI, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9701–TA–84.**

Tax Court of Indiana.

Feb. 8, 2000.

Publication Ordered March 7, 2000.

Curtis J. Dickinson, Dickinson & Abel, Indianapolis, IN; David L. Pippen, Indianapolis, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Jeffrey S. McQuary, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

■ Petitioner CDI, Inc. (CDI) appeals the final determination of the State Board of Tax Commissioners (State Board) denying CDI's request to lower the assessed value of its warehouse for the 1991 assessment year. In this original tax appeal, CDI presents the following issues for the Court's review:

I. Whether the State Board exceeded its legislative authority in conducting a hearing in this matter without having issued a letter of appointment to its hearing officer;

II. Whether the State Board improperly denied CDI's warehouse grading and kit building adjustments; and

III. Whether the State Board erred in using the forty-year economic life table in determining the warehouse's physical depreciation.[1]

## FACTS AND PROCEDURAL HISTORY

CDI owns a truck warehouse in Vigo County. CDI filed a Form 130 petition for review of assessment with the Vigo County Board of Review (BOR) on or about December 9, 1991, challenging the assessment of its property (parcel number 06–07–32–300–013) as of the March 1, 1991 assessment date. The BOR conducted a hearing on the petition on November 18, 1992 and issued its determination on November 19, 1993. Thereafter, on December 15, 1993, CDI filed a Form 131 petition for review of assessment with the State Board. On February 22, 1996, the State Board held a hearing on the petition. The State Board issued its final determination on November 22, 1996. CDI filed an original tax appeal with this Court on January 6, 1997. A trial in this matter was conducted on December 14, 1998. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

 This Court gives the final determinations of the State Board great deference when the State Board acts within the scope of its authority. *See Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by sub-

stantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *See id.*

## DISCUSSION

The Court will consider each of CDI's issues in turn.

### I. Hearing Officer's Appointment

 CDI asserts that the State Board issued no written order appointing Hearing Officer Stephen King (King). To support its position, CDI points to King's testimony at trial, where King admitted to not having received any written prescription of duty for CDI's specific appeal. (Trial Tr. at 7.) Therefore, CDI contends that the State Board's actions exceeded its legislative authority. However, there is no evidence in the record that CDI objected to King's authority at the administrative level, either at the hearing or during the physical inspection of the warehouse, to hear CDI's appeal on behalf of the State Board. Therefore, the Court finds that CDI's silence at the administrative level on the issue of King's authority to conduct the hearing constituted consent to the hearing. CDI thus waived the issue and may not now raise the issue for the first time in its original tax appeal. *See Hoogenboom–Nofziger v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1018, 1021–22 (Ind.Tax Ct.1999); *see also State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.*, 420 N.E.2d 1324, 1328 (Ind.Ct.App.1981).

### II. Grade & Kit Adjustments

CDI argues that the State Board did not support its final determination with sub-

---

1. CDI raises two additional issues not considered by the Court: (1) whether the State Board's assessment regulations violate the Indiana Constitution; and (2) whether the State Board's final determination was not supported by sufficient findings of fact. As to the issue of constitutionality, the fact that the subject improvement was graded under an unconstitutional regulation does not mean the assessment will be invalidated on that basis. *See Whitley Prods., Inc. v. State Bd. of Tax*

Comm'rs, 704 N.E.2d 1113, 1121 (Ind.Tax Ct.1998) (citations omitted), *review denied.* "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id.* Furthermore, because of the Court's resolutions of issues II & III, *infra*, the Court need not consider whether the State Board supported its final determination with sufficient findings.

stantial evidence, as regards its decisions assigning the warehouse a grade of D plus two, *see* IND. ADMIN. CODE tit. 50, r. 2.1–4–3 (1992) (codified in present form at IND. ADMIN. CODE tit. 50, r. 2.2–10–3 (1996)) and denying the warehouse a kit building adjustment, *see* IND. ADMIN. CODE tit. 50, r. 2.1–4–5 (1992)[2] (codified in present form at IND. ADMIN. CODE tit. 50, r. 2.2–11–6 (1996)). CDI contends that the warehouse's physical structure deviates from the model used to determine its base reproduction cost and that a kit building or grade adjustment could account for such deviations. While the State Board did lower the building's grade, CDI maintains that the State Board's grade adjustment was arbitrary. According to CDI, the State Board lacked "any lawful basis for [its] determination of pricing adjustment." (Pet'r Br. at 9.)

■ The Court need not discuss whether the State Board's decision is supported by substantial evidence, because CDI points to no probative evidence of record indicating what the correct grade should be or whether the structure is a kit building. When a taxpayer contests the grade assigned an improvement, he must offer probative evidence concerning the alleged assessment error. *See Meridian Hills Country Club v. State Bd. of Tax Comm'rs*, 512 N.E.2d 911, 914 (Ind. Tax Ct.1987) (finding taxpayer's evidence, standing alone, that like golf course facility received lower grade, even though it hosted a major tournament, was insufficient to prove "violation of the uniform and equal mandate"); *see also Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998) ("[T]he tax-

payer must offer probative evidence concerning the alleged error.") (citations omitted); *White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 559 (Ind. Tax Ct.1999) ("[T]he taxpayer must offer probative evidence relating to the grade issue."). A taxpayer's conclusory statements do not constitute probative evidence concerning the grading of the subject improvement. *See Whitley Prods.*, 704 N.E.2d at 1119. Where the taxpayer fails to provide the State Board with probative evidence supporting its position on the grade issue, the State Board's duty to support its final determination with substantial evidence is not triggered. *See id.* at 1119–20.

■ Also, a taxpayer must provide the State Board with probative evidence as to whether an improvement qualifies as a kit building. As this Court recently explained:

> When a taxpayer seeks a kit adjustment, it is incumbent upon the taxpayer to offer evidence tending to show the improvement qualifies for the kit adjustment. If the taxpayer fails to do so, the taxpayer's claim fails. This is not an onerous burden.... Instructional Bulletin 91–8[3] outlines a large number of specific characteristics of kit buildings. Accordingly, it should not be difficult for taxpayers to identify those characteristics in an improvement alleged to qualify for the kit adjustment.

*Whitley Prods.*, 704 N.E.2d at 1121 (citation omitted).[4] *See also King Indus. Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 343 (Ind.Tax. Ct.1998) ("The kit building adjustment is one example of a case

---

2. Following Schedule A.1, this regulation provides "Deduct 50% of base price (1st floor) for pre-engineered kit-type structure."

3. Instructional Bulletin 91–8, issued in 1991 by the State Board, was admitted into evidence as Joint Exhibit 3. (Trial Tr. at 3.) The bulletin instructs assessors on how to determine which buildings qualify for the kit building adjustment; it provides examples of kit buildings and outlines several characteristics

of these buildings. *See Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 803–04 (Ind.Tax Ct.1998), *reh'g denied.*

4. This standard is not limited to the issues of grade and kit building adjustments. *See White Swan Realty*, 712 N.E.2d at 560–61 (observing that a taxpayer must offer probative evidence regarding an improvement's condition and the classification of land).

where the taxpayer must attempt to offer ... a competing view of the assessment. The taxpayer must first offer probative evidence tending to prove it is entitled to the kit adjustment."). *See generally Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1234 (Ind.Tax Ct.1998) (citing examples where taxpayer must provide evidence supporting a competing view of the assessment). As with the issue of grade, the State Board is not required to support its denial of the kit building adjustment until the taxpayer comes forward with probative evidence demonstrating it is entitled to the adjustment. *See King Indus.*, 699 N.E.2d at 343.

 CDI failed to provide probative evidence as to either the grading of the warehouse or the classification of the improvement as a kit building. CDI's chief witness, Mr. Mark Drew Miller (Miller), observed that the warehouse was "basically a pre-engineered structure, with steel framing, metal walls, minimal heat, [and] numerous doors." [5] (Trial Tr. at 19.) When asked how he determined the improvement was pre-engineered, Miller responded "You can see that ... it's more along a kit-type, where you order the parts and put them together. There is—at least that's my opinion, anyway. That you can see certain modifications if it's not a pre-engineered structure." (Trial Tr. at 19.) He added that he was not "aware of" any structural modifications. (Trial Tr. at 20.) Miller did indicate that roof supports were "basically" steel framing with tapered columns. (Trial Tr. at 21.) He indicated that the roof supports could thus be considered "low cost" or "economical." (Trial Tr. at 21.) When asked if the warehouse qualified as a kit building under Instructional Bulletin 91–8, Miller answered "Given the vagueness of the definition, I would say

yes, it would qualify. I can't see anything that would make it not qualify." (Trial Tr. at 20.) Further, Miller opined that, given the State Board's past grading of other truck terminals in similar situations, equity required that CDI's warehouse be assigned a grade of D minus one. (Trial Tr. at 20.)

Miller's testimony does not constitute probative evidence as to the issues at hand. His comments were conclusory in nature. He provides the Court with absolutely no insight as to why the structure should be classified as a kit building. Miller stated that the warehouse was "basically" a pre-engineered structure having certain basic features, i.e. steel framing and metal walls, without explaining how these features qualify the warehouse as a kit building. Miller appeared to make a feeble attempt to apply the standards found in Instructional Bulletin 91–8 by pointing out that the roof supports consist of "basically" low cost, economical metal framing with tapered columns. He never referenced the bulletin, which calls on assessors to identify the type of interior column and roof beam support in a purported kit building.[6] (Joint Ex. 3 at 4.) Rather, he expects the Court to link up and compare the appropriate standard from the bulletin with his vague description. The Court refuses to do CDI's work for it. Moreover, Miller informed the Court that he could find no reason why the kit adjustment could not apply. However, he provided virtually no evidence as to why it should apply. Miller's testimony is gravely insufficient to support his conclusion that the warehouse qualified for the kit building adjustment.

 In like fashion, Miller offered no probative evidence as to the proper grading of the warehouse. He fails to explain

---

**5.** "Buildings that qualify for the kit adjustment are, by definition, light pre-engineered buildings." *Barth*, 699 N.E.2d at 808 n.20.

**6.** The bulletin states that the only type of structures qualifying as kit buildings are the "low cost economical version[s]" of "pre-designed and pre-engineered structures."

(Joint Ex. 3 at 3.) The bulletin provides four examples of column and beam systems found in kit buildings. (Joint Ex. 3 at 4–5.) One example is the "tapered column," which uses columns that are "made of low cost, light weight steel and only offer a slight upgrade to the structure." (Joint Ex. 3 at 5.)

how he calculated his suggested grade of D minus one. According to Miller, other truck terminals in similar situations have been afforded this grading. However, Miller neither identifies nor describes any specific instance where a similarly structured warehouse facility was assigned a grade of D minus one. Conclusory observations of this type do not constitute probative evidence. The Court will not and, indeed, cannot rely upon his unsupported opinion.[7] *See Heart City Chrysler v. State Bd. of Tax Comm'rs,* 714 N.E.2d 329, 333 (Ind.Tax Ct.1999) ("[T]his Court will not substitute conclusory statements for probative evidence.")

CDI failed to come forward with probative evidence regarding grade or kit building adjustments for the warehouse. Thus, the State Board had no duty to refute CDI's arguments with a competing view. *See Whitley Prods.,* 704 N.E.2d at 1119–20; *King Indus.,* 699 N.E.2d at 343. Therefore, the Court need not consider whether substantial evidence supports the State Board's grading of the warehouse or its refusal to grant the warehouse a kit building adjustment.

### III. Economic Life Table

CDI's final point of contention is that the State Board selected and applied the wrong economic life table in calculating the physical depreciation assigned to the warehouse. In its final determination, the State Board described the warehouse as a "medium duty fire resistant structure that must be depreciated from the 40 year table." (Joint Ex. 1.); *See also* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at IND. ADMIN. CODE tit. 50, r. 2.2–11–7 (1996)). CDI believes that the building is appropriately described as a "light pre-engineered building," which structure is depreciated under the thirty year economic life table. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992). According to CDI, the State Board's regulations fail to define the terms "medium duty" and "light pre-engineered," which definitions are "crucial to a proper application of physical depreciation." (Pet'r Br. at 10.) CDI argues that the "State Board's reference to terms nowhere defined or elaborated upon by [its] regulations cannot be found anything but arbitrary and capricious." (Pet'r Reply Br. at 5.) Essentially, CDI complains that the regulations governing the selection of the appropriate economic life table lack ascertainable standards.

■ As with issue II, *supra,* the Court need not address the merits of

---

**7.** At trial, the Court admitted into evidence Joint Exhibit 2, an "Assessment Review and Analysis" of the warehouse prepared by Miller. Unfortunately for CDI, the document's title is a misnomer, as it provided no thorough review or analysis of its facility. The first page of the document consisted of a copy of the State Board's notice of hearing on the Form 131 petition for review. The second page shows a picture of two sides of the warehouse, with what appears to be two loading docks at one corner of one side and a series of overhead doors running the viewable length of the other side. The photograph is of little assistance. In *Whitley Products,* the taxpayer provided photographs of the subject improvement as proof that it qualified as a kit building. The Court's observation in *Whitley Products,* 704 N.E.2d at 1122, that the photographs "did not show any characteristics that distinguished the subject improvement from any other light pre-engineered structure" is applicable to the instant case. The picture of the warehouse lacked any explanatory information as to how the warehouse qualified as a kit building. By itself, the picture was not probative evidence. *See Heart City Chrysler v. State Bd. of Tax Comm'rs,* 714 N.E.2d 329, 333 (Ind.Tax Ct.1999) ("[T]his Court has rejected attempts by taxpayers to put forth evidence such as photographs without explanations.").

The third page of the document, titled "Issues and Contentions," addresses, among other things, the issues of grade and kit building adjustments. Specifically, it asserts "The building is a light pre-engineered structure or kit-type and varies dramatically from the model described in the assessment manual. A grade of D – 1 or 70% should be applied to adjust for those differences." This conclusory statement is essentially identical to Miller's trial testimony. It does not constitute probative evidence warranting reversal of the State Board's final determination.

CDI's argument. A taxpayer may not secure the reversal of a State Board final determination regarding a structure's physical depreciation simply by pointing out the inadequacy of the regulations governing physical depreciation in general and specifically governing the selection of the appropriate economic life table. *See Phelps Dodge v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1099, 1104 (Ind. Tax Ct.1999) (challenging rules governing condition), *review denied; White Swan Realty,* 712 N.E.2d at 559–60 (challenging rules governing grading and condition); *Whitley Prods.,* 704 N.E.2d at 1121 (challenging rules governing grading). Rather, the taxpayer must offer probative evidence regarding the purported error it has raised. *See Phelps Dodge,* 705 N.E.2d at 1104; *White Swan Realty,* 712 N.E.2d at 559–60; *Whitley Prods.,* 704 N.E.2d at 1121.

CDI failed to come forward with probative evidence regarding the appropriate economic life table to apply in determining physical depreciation for the warehouse. At trial, Miller testified that the State Board's regulations do not describe what constitutes "medium duty." (Trial Tr. at 19.) He remarked that the regulations do have separate descriptions for "light" and "heavy," but the models for truck warehouses do not distinguish between heavy duty or light features. (Trial Tr. at 19.) Miller described the warehouse as a "pre-engineered structure." (Trial Tr. at 19.) He stated that the warehouse should be characterized as "light pre-engineered." (Trial Tr. at 20.) When asked how this determination is made, Miller replied, "It's basically a warehouse.... It's not set up for heavy loads—craneways, heavy machinery.... There is no need

for it to be of heavy construction. And ... in looking at it, it appears fairly light." (Trial Tr. at 20.)

Miller's remarks do not assist the Court in determining whether the warehouse was a light pre-engineered structure or whether it was a medium duty fire-resistant building. He does not explain how the warehouse is not set up for heavy loads or why this is important as to what constitutes a light pre-engineered structure. Moreover, that there is no "need" for a building to be made of heavy construction tells the Court nothing as to whether it is in fact made of heavy construction. In addition, the "appearance" of being lightweight provides the Court with no evidentiary foundation for determining whether the structure should be deemed lightweight. *Cf. Whitley Prods.,* 704 N.E.2d at 1122 ("Testimony that a given improvement *resembles* a kit building is not sufficient to show that the subject improvement *is* a kit building.") (emphasis in original).

Miller's testimony does not constitute probative evidence on the issue of physical depreciation, especially as regards the selection of the appropriate economic life table for the warehouse. As a result, the State Board's duty to develop and support a competing view of the proper assessment was never triggered. *See Whitley Prods.,* 704 N.E.2d at 1119–20; *King Indus.,* 699 N.E.2d at 343.

## CONCLUSION

For all of the aforementioned reasons, the Court hereby AFFIRMS the State Board's final determination in all respects.[8]

---

**8.** Counsel for CDI at trial questioned Hearing Officer King at some length as to whether Instructional Bulletin 91–8 or the State Board's regulations define or describe various terms, such as "medium duty," "structurally modified," "light pre-engineered," "economy quality," "fair workmanship," "cheap quality," "substandard," and "low-cost steel." (Trial Tr. at 10–12, 14–15 & 35.) Questions

as to definitions do not constitute probative evidence on the issues presented by CDI. *See generally Phelps Dodge,* 705 N.E.2d at 1104–05 (providing examples of probative evidence that taxpayer could submit regarding physical depreciation).

The Court observes that, where specific words or phrases used in the statutes, regulations or documents like the bulletin in ques-

## ORDER OF PUBLICATION

Respondent, State Board of Tax Commissioners, by counsel, filed its Verified Motion For Publication Of Memorandum Opinion on February 22, 2000.

The Court finds that more than ten (10) days has elapsed since said motion was filed and no objection to the same has been made.

The Court, having considered same and being duly advised in the premises, now finds said motion should be GRANTED and that this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. Respondent's "Verified Motion For Publication Of Memorandum Decision" is

granted and this Court's opinion heretofore handed down in this cause on February 8, 2000, marked "Not For Publication" is now ordered published.

tion are not defined, it will strive to give those words or phrases their plain, ordinary and usual meanings. *See Dalton Foundries, Inc. v. State Bd. of Tax Comm'rs*, 653 N.E.2d 548, 553 (Ind.Tax Ct.1995). Where a taxpayer asserts that a word or phrase has a unique or contextual meaning, it is generally helpful if the taxpayer at least attempts to provide a definition for the word or phrase. *See North Park Cinemas v. State Bd. of Tax Comm'rs*, 689 N.E.2d 765, 769 (Ind.Tax Ct.1997) ("A party who stands to be adversely affected by a petition for review has an obvious responsibility to ... present evidence and argument in support of its position.").

A myriad of dictionaries and thesauri—both general and specialized—are available to assist the taxpayer in ferreting out a word's or phrase's meaning. *See Precedent v. State Bd. of Tax Comm'rs*, 659 N.E.2d 701, 705 (Ind. Tax Ct.1995) ("The plain, ordinary, and usual meaning of a word is usually found in a dictionary."). For example, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1403 (1981) defines "medium" as "intermediate in amount, quality, position, or degree." This same source defines "light" as "having little weight" or "not heavy or massive in construction or appearance." *See id.* at 1308. It defines "low" as "being beneath a rate, amount, or value considered normal, standard, or adequate by some criteria" and assigns the following definition to "low-cost": "obtainable at a low cost." *See id.* at 1341. Also, ROGET'S II THE NEW THESAURUS 595 (1980) states that "medium" is synonymous with "average" and means "[s]omething as a type, number, quality, or degree that represents a midpoint between extremes on a scale of valuation." It further gives the synonym "lightweight" and "weightless" to the word "light,"

describing the term as "[h]aving little weight; not heavy." *See id.* at 563. Finally, the thesaurus states that a synonym for "low-cost" is "cheap" and means "low in price." *See id.* at 574. The Court also reminds Counsel for CDI that today's word processing programs often have a thesaurus feature for ease of reference in assisting the writer in fleshing out the meaning of a word or phrase.

In addition, Counsel for CDI questioned King as to his general methodology and his specific instructions for applying the bulletin and regulations' assessment standards. (Trial Tr. at 8–16, 33–38.) Questions as to methodology and instruction do not constitute probative evidence on the issues presented by CDI.

King did indicate that the warehouse deviated from the truck warehouse model in that the subject improvement had metal walls and not concrete block. (Trial Tr. at 35.) Deviations from the model used by assessing officials and the State Board are relevant in considering whether the appropriate grade was applied. *See Whitley Prods.*, 704 N.E.2d at 1117 (noting two ways to account for improvement's deviation from the model—use of separate cost schedules to subtract missing components and application of grade adjustments, with the former being the preferred method). The deviations may provide clues as to the proper model. However, CDI failed to elaborate upon the extent or the effect of this specific deviation in its briefs to this Court. Thus, King's testimony did not constitute probative evidence sufficient to trigger the State Board's burden of production on the issue of grade. *See id.* at 1119–20.

