**FLEET SUPPLY, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9806–TA–58.**

Tax Court of Indiana.

March 13, 2001.

Publication Ordered April 24, 2001.

---

David L. Pippen, Attorney at Law, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioner, Fleet Supply, Inc. (Fleet Supply), appeals the Final Determination of the State Board of Tax Commissioners (State Board) establishing the assessed value of its property as of March 1, 1995. Fleet Supply presents the following issues for the Court's consideration:

I. Whether the State Board erroneously determined the Main Building's physical depreciation based upon a forty-year, instead of a thirty-year, life expectancy table;

II. Whether the State Board improperly deemed the subject improvements' conditions to be average;

III. Whether the State Board incorrectly applied a D grade to the Main Building; and

IV. Whether the State Board's refusal to apply a negative influence factor to the subject land was erroneous.[1]

## FACTS AND PROCEDURAL HISTORY

Fleet Supply owns the subject property, a "discount retail facility," in Cass County, Indiana. (Oral Argument Tr. at 3.) Improvements on the parcel include a Main Building and two smaller, pole barns. Fleet Supply filed a Form 131 Petition for Review of Assessment with the Cass County Auditor on July 2, 1996. The petition challenged the Cass County Board of Review's (BOR) assessment of Fleet Supply's land at $48,330 and its improvements at $333,400. The State Board conducted an administrative hearing on Fleet Supply's petition on January 8, 1998. On April 28, 1998, the State Board issued its Final Determination. In the Final Determination, the State Board did not alter the assessed value of Fleet Supply's land but did lower the assessed value of its improvements to $291,100.

Fleet Supply filed an original tax appeal on June 4, 1998. The Court conducted a trial in this matter on March 19, 1999. On April 12, 2000, the Court heard oral arguments from the parties and thereafter took the case under advisement. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind.Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind.Tax Ct.1998).

### Discussion

#### I. Life Expectancy Table

Fleet Supply contends that the State Board applied the wrong life expectancy table in determining the physical depreciation of its Main Building. According to Fleet Supply, the State Board should have applied the thirty-year life expectancy table, not the forty-year life expectancy table. The regulations provide: "Physical depreciation is determined by the combination of age and condition. Each type of building has a life expectancy that is determined by the building components and the use of the building." Ind.Admin.Code tit. 50, r. 2.2–10–7(c) (1996). "To apply physical depreciation, the assessor must select the correct life expectancy table and identify the condition and age of the building." *Id.*, r. 2.2–10–7(d). The regulations provide four different life expectancy tables

1. Fleet Supply also claims that the State Board's assessment regulations in general violate the Indiana Constitution. However, the fact that the subject property was assessed under an unconstitutional regulation does not mean that the assessment will be invalidated on that basis. *Whitley Prods., Inc. v. State Bd.*

*of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998) (citations omitted), *review denied*. "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id.* Therefore, the Court will not address Fleet Supply's facial constitutional challenge.

for use in determining the physical depreciation of commercial and industrial buildings. *Id.*, 2.2–10–7(c). These tables are located in the regulations at IND.AD-MIN.CODE tit. 50, r. 2.2–11–7 (1996). Among other things, the thirty-year life expectancy table is used to assess "light pre-engineered buildings" and the forty-year life expectancy table is used to assess "all fire-resistant buildings not listed elsewhere." IND.ADMIN.CODE tit. 50, r. 2.2–11–7 (1996).

■ A fifteen percent physical depreciation adjustment was assigned to the Main Building. (Joint Ex. 1 at 10, 12.) The State Board's Final Determination states that "After inspecting the structure, considering the assessor's statement and evidence, and reviewing 50 IAC 2.2–10 and 50 IAC 2.2–11, it is determined [that] the 40 year life table is proper. No change [of assessment] is made." (Joint Ex. 1 at 19.) To prove this decision incorrect, Fleet Supply was required to submit to the State Board probative evidence sufficient to establish a prima facie case as to the invalidity of the application of the forty-year life expectancy table. *CDI, Inc. v. State Bd. of Tax Comm'rs*, 725 N.E.2d 1015, 1022 (Ind. Tax Ct.2000).

Fleet Supply argues that its main structure was a light pre-engineered building, so its physical depreciation should have been determined via application of the thirty-year life expectancy table. Thus, Fleet Supply must have offered evidence showing that its building had construction characteristics typical of a light pre-engineered building. *Damon Corp. v. State Bd. of Tax Comm'rs*, 738 N.E.2d 1102, 1111 (Ind.Tax Ct.2000) (involving kit building adjustment under prior regulations).

At the administrative hearing, Fleet Supply submitted an "Assessment Review and Analysis" (Review) addressing all of its challenges to the BOR's assessment.

M. Drew Miller of Landmark Appraisals, Inc., Fleet Supply's taxpayer representative, prepared the Review. The Review stated that the "County Board failed to accurately apply the correct amount of physical depreciation based upon a 30 year life expectancy." (Joint Ex. 2 at 3.) The Review also contained blurred, black-and-white copies of two photographs of the Main Building. (Joint Ex. 2 at 2.) In addition, Miller submitted a copy of the State Board's Final Determination of an appeal challenging the subject property's assessment as of March 1, 1992. (Joint Ex. 4.) This Final Determination for 1992 concluded that the thirty-year life expectancy table should be used to calculate the Main Building's physical depreciation. (Joint Ex. 4 at 2.) At trial, Miller made the following statement: "This building is ... a light pre-engineered structure.... It has a general retail use. There is no need for heavy flooring or heavy framing." (Trial Tr. at 16.) The State Board's hearing officer, Mark A. Bisch, also testified at trial, saying that the subject improvement had metal construction and concrete floors with some tile. (Trial Tr. at 37.)

■ Fleet Supply has not submitted probative evidence sufficient to establish a prima facie case regarding which economic life table should be applied in determining the Main Building's physical depreciation. The Review's statement and Miller's remarks at trial are conclusory in nature and therefore non-probative. *CDI, Inc.*, 725 N.E.2d at 1020–21. Miller's statement that neither heavy flooring nor framing is needed does not help the Court make a determination. That these features are not needed does not mean that they are not present. Further, Miller makes no effort to explain why, if these features are not present, the Main Building must then be viewed as a light, pre-engineered structure. *Id.* at 1020. The unclear photo-

graphs lack captions and Miller made no effort to explain what is depicted in them. Therefore, the pictures lack any probative value.[2] *Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999). The fact that the Main Building has metal construction and concrete floors may be probative as to whether it must be considered a light, pre-engineered building. However, Fleet Supply provides no analysis as to how these features are probative. The Court will not make the taxpayer's argument and analysis for it. *CDI, Inc.*, 725 N.E.2d at 1020. Moreover, as this Court has said before, unsupported allegations remain just that—mere allegations that lack any probative value. *CGC Enters. v. State Bd. of Tax Comm'rs*, 714 N.E.2d 801, 804 (Ind.Tax Ct.1999) (citing *Herb v. State Bd. of Tax Comm'rs*, 656 N.E.2d 890, 893 (Ind.Tax Ct.1995)). Finally, the Court reminds Fleet Supply that each assessment and each tax year stands alone. *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs*, 568 N.E.2d 1116, 1124 (Ind.Tax Ct.1991) (citation omitted). Thus, evidence as to the Main Building's assessment in 1992 is not probative as to its assessed value three years later. Fleet Supply has made no prima facie case as to its position that the thirty-year life expectancy table should have been applied to determine the Main Building's physical depreciation adjustment.

## II. Condition

Fleet Supply argues that the average condition assigned to the Main Building and two pole barns was erroneous. As noted *supra*, section I, determining a building's condition is necessary for calculating its physical depreciation. Condition is the "degree of wear and tear displayed by a building" and "is determined relative to the age of the building." IND.ADMIN.CODE tit. 50, r. 2.2–10–7(b) (1996). "Condition measures the remaining usefulness of the building based on its age." *Id. See also White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 560 (Ind. Tax Ct.1999), *review denied.* A taxpayer challenging the condition of its building "must offer probative evidence concerning the condition of that improvement." *White Swan Realty*, 712 N.E.2d at 560. Probative evidence might consist of evidence of "decay, dry rot, cracks, or structural defects." IND.ADMIN.CODE tit. 50, r. 2.2–10–7(a) (1996). *See also Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1099, 1104 (Ind.Tax Ct.1999), *review denied.*

As regards condition, the Review stated that the buildings have "received minimal maintenance over the years, causing the condition to be less than average." (Joint Ex. 2 at 3.) Miller also testified that the Main Building had "some dents in the metal, stains in the ceiling tile, some areas of discoloration and scraping on the floor tile." (Trial Tr. at 17.) This, Fleet Supply asserts, demonstrates that the condition of the Main Building is less than average.

The Review offers only a conclusory observation and is therefore not probative as

---

**2.** As discussed *infra*, section IV, Fleet Supply also submitted a letter from Miller to Bisch as evidence. (Joint Ex. 3.) Along with the letter, Miller submitted another photograph of the subject property. A copy of this photograph was submitted as part of Joint Exhibit 3. The black-and-white copy is also blurry. It is uncaptioned, and neither the letter nor any testimony by Miller explains what it shows.

Thus, this letter is also non-probative and does not help Fleet Supply establish a prima facie case on this issue. *Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind.Tax Ct.1999). In addition, the Court notes that none of the submitted photographs are probative as to the condition and grade issues raised by Fleet in sections II and III, *infra. Id.*

to condition. *CDI, Inc.*, 725 N.E.2d at 1020–21. Miller's testimony was perhaps probative as to as to the level of deterioration suffered by the Main Building. However, it fails to inform the Court how these items, if present, actually affected the Main Building's remaining usefulness. Fleet Supply provided no explanation of its evidence sufficient to establish a prima facie case that the assignment of an average condition to the Main Building and two pole barns was invalid.

### III. Grade

Fleet Supply challenges the D grade assigned to the Main Building by the State Board. In assigning the Main Building a D grade, the State Board actually lowered the building's grade from a C–1. *See* IND.ADMIN.CODE tit. 50, r. 2.2–10–3 & –11–6 (Schedule F) (1996) (assigning D grade a multiplier of 80% and C–1 grade a multiplier of 95%). Fleet Supply argues that a D–1 grade should be applied to the Main Building, which would result in an additional ten percent downward adjustment of its base value. *Id.*, r. 2.2–11–6.

 To make its case, Fleet Supply was required to submit probative evidence sufficient to establish a prima facie case as to grade. *CDI, Inc.*, 725 N.E.2d at 1019. The Review offers only a conclusory observation that the subject building is inferior to the model used to price it and therefore should be assigned a grade lower than a C. (Joint Ex. 2 at 3.) Thus, the Review is non-probative as to grade and cannot help es-

tablish a prima facie case on this issue.[3] *CDI, Inc.*, 725 N.E.2d at 1020–21.

██ Miller made similar, conclusory remarks at trial that are non-probative as to grade. (Trial Tr. at 12–13.) Miller stated that at the inspection following the administrative hearing, he "presented the building, walked the hearing officer through the building. And the regulations—or the descriptions of the models are part of the regulations." (Trial Tr. at 13.) According to Miller, the D grade was incorrect "[b]ased on other decisions that [he has] seen from the State Tax Board on similar buildings." (Trial Tr. at 14.) Miller's opinion was also based upon his experience in "seeing ... what [he] would consider an average quality building." (Trial Tr. at 15.) With respect to specific deviations, Miller stated that the building lacked: (1) "architectural attractiveness"; (2) partitioning; and (3) a display area. (Trial Tr. at 14.) He added that the Main Building had an "almost kit-type structure." (Trial Tr. at 14.)

These remarks fail to inform the Court as to how the Main Building differs from the model used to assess it and why a grade adjustment is appropriate.[4] Moreover, Miller failed to identify or describe any specific instance where the State Board has priced a similarly structured building below a D grade. *CDI, Inc.*, 725 N.E.2d at 1021. The models' descriptions are indeed part of the regulations, but the taxpayer—not the Tax Court or the State

---

**3.** As stated *supra*, the Main Building was assessed as a C–1 by the BOR. The two pole barns were given C grades. Thus, the Court is unsure whether the Review addresses the grade of the Main Building (the only building for which the State Board considered the grade issue), the two pole barns or all three structures. The ambiguity is not important, however, because the Review's observation is not probative as to any of the three buildings' grades.

**4.** The Court reminds the taxpayer that it should advocate for objective adjustments, when possible, to account for a subject improvement's deviations from the model used to assess it; the subjective grade adjustment must be avoided where an adjustment using the base rate adjustment and/or unit-in-place tables is feasible. *Clark v. State Bd. of Tax Comm'rs*, 742 N.E.2d 46 (Ind.Tax Ct.2001).

Board—is responsible for comparing the regulations' models with the subject building's features and making a logical, well-reasoned argument supporting its position based upon the evidence submitted. *Id.* at 1020. Miller's observations, even if true and probative as to grade, do not explain what the model requires and how the subject building differs from the model in a way that requires an additional downward adjustment in its base value. A taxpayer (or counsel or witness for the taxpayer) cannot simply point to alleged deficiencies in a building and expect to make prima facie case as to grade or any other issue. *Cf. Phelps Dodge,* 705 N.E.2d at 1104 (where taxpayer challenged regulations governing condition based upon lack of ascertainable standards, Court stated that a "taxpayer will not be able to come into court, point out the inadequacies of the present system and obtain a reversal of assessment") (citation omitted).

Hearing Officer Bisch testified that, at the subject property's inspection, Fleet Supply pointed to no specific evidence that justified assignment of a lower grade. (Trial Tr. at 33.) Bisch was not obligated to make the taxpayer's case for it. *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1118 (Ind.Tax Ct.1998), *review denied.* Rather, Bisch had the right to expect that Fleet Supply would identify and present probative evidence concerning any alleged errors, including grade, to him. *Id.* at 1118–19. *See also North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 769 (Ind.Tax Ct.1997) (noting that taxpayer has an "obvious responsibility to appear before the State Board and present evidence and argument in support of its position"). Fleet Supply did not present a prima facie case as to grade.

### IV. Negative Influence Factor

■ The final issue raised by Fleet Supply is whether the State Board should have applied a negative influence factor to its valuation of the subject parcel. Specifically, Fleet Supply contends that its parcel is misimproved. An influence factor "refers to a condition peculiar to the acreage tract that dictates an adjustment to the extended value to account for variations from the norm." IND.ADMIN.CODE tit. 50, r. 2.2–4–17(c)(8) (1996). *See also id.,* r. 2.2–4–12 (1996); 2.2–4–1 (Supp.2000). An influence factor is expressed as a percentage increase or decrease in the subject land's assessed value, with the percentage representing the "composite effect of the factors that influence the value." *Id.,* 2.2–4–17(c)(8). "The decision whether to apply an influence factor calls for subjective judgment." *Wirth v. State Bd. of Tax Comm'rs,* 613 N.E.2d 874, 878 (Ind.Tax Ct.1993). In applying an influence factor, an assessing official must first identify the deviations from the norm and then quantify the variations as a percentage. *White Swan Realty,* 712 N.E.2d at 562. According to the regulations, a "misimprovement" indicates that a negative adjustment in the land's value is warranted. IND.ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9)(E) (1996). "This factor is used when the parcel does not have the same use as surrounding parcels. The base rate is computed based on the predominant use of the surrounding parcels." *Id.*

■ The State Board determined that the "land is not misimproved and a negative influence factor is not warranted." (Joint Ex. 1 at 18.) In its brief, Fleet Supply contends that the predominate use of the parcels surrounding the subject parcel is not retail (as is the subject parcel) and therefore the misimprovement factor should have been applied. (Pet'r Br. at 9.) To support this claim, Fleet Supply refers to Miller's trial testimony, where he indicated that two parcels (to the north and

south of the subject parcel) have residential uses, one parcel is not used (the west parcel has a vacant grocery store) and one parcel has a "special use" (the east parcel has a restaurant). (Pet'r Br. at 9) (citing Trial Tr. at 11.) Miller further stated that, in his opinion, the regulations require application of a negative influence factor if the "surrounding properties are of a different use." (Trial Tr. at 11.) The Review makes the statement that "The [BOR] failed to properly decrease the land value due to a misimprovement, i.e., the subject parcel does not have the same use as the surrounding parcels." (Joint Ex. 2 at 3.) Also, Fleet Supply submitted Joint Exhibit 3, which is an unsigned letter from Miller to Hearing Officer Bisch. The letter is a response to a request by Bisch for additional information to be submitted after the administrative hearing. (Joint Ex. 3.) The letter states in part:

> The assessor's land value is wrong because she failed to make a deduction due to the misimprovement as required in the assessment regulations.... The property south of the subject is of a different use as is the property to the north of the subject parcel. As more than 50% of the surrounding properties are of a different use, a 50% negative influence factor should be applied to the land. The influence factor is needed because it is required by the regulations.

(Joint Ex. 3.) In the letter, Miller requested that Bisch send him any "specific guidelines" provided or used by the State Board to determine the influence factor. (Joint Ex. 3.)

To properly identify a misimprovement, Fleet Supply needed to submit probative evidence sufficient to show that (1) its parcel did not have the same use as surrounding parcels and (2) the inconsistent usage negatively impacted the subject parcel's value. IND.ADMIN.CODE tit. 50, r. 2.2–

4–10(a)(9)(E). *Cf. Talesnick v. State Bd. of Tax Comm'rs*, 693 N.E.2d 657, 661 (Ind. Tax Ct.1998) (observing that where taxpayers presented evidence that water flowage easement encroached upon their land to a greater extent than it did to other land surrounding reservoir, State Board should have considered whether taxpayers' land was "encumbered by the easement to an extent that application of a negative influence factor is warranted"). Miller's testimony tends to show that the immediately surrounding parcels had uses that were different than that of the subject parcel. The letter is of less help, because its observations are conclusory. The letter is not probative as to the land's value. *CDI*, 725 N.E.2d at 1020–21.

Miller's interpretation of the regulations is mistaken. The regulations require an assessor to indicate on the property record card a "decrease [in the subject parcel's value] based on a misimprovement to the land." IND.ADMIN.CODE tit. 50, r. 2.2–4–10(a)(9)(E). *See also id.*, r. 2.2–4–17(c)(8). Thus, contrary to Miller's understanding, a different usage does not *automatically* warrant application of a negative influence factor. Fleet Supply failed to provide evidence that the inconsistent usage lowered the value of its land. Therefore, Fleet Supply did not make a prima facie case that a negative influence factor should have been applied to its property.

**CONCLUSION**

Fleet Supply failed to make a prima facie case as to any of the issues it raised. Thus, the State Board was not required to support its Final Determination as to these issues with substantial evidence. *CDI, Inc.*, 725 N.E.2d at 1019. Therefore, the Court AFFIRMS the State Board's Final Determination in all respects.

## ORDER

Respondent, State Board of Tax Commissioners, by counsel, files its Motion for Publication of Memorandum Decision.

No response or objection has been filed by the Petitioner.

The court, having considered same and being duly advised in the premises, now finds said motion should be GRANTED and that this court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. Respondent's "Motion for Publication of Memorandum Decision" is granted and this court's opinion heretofore handed down in this cause on March 13, 2001, marked "Not for Publication" in now ordered published.