HEART CITY CHRYSLER, Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9701–TA–00020.

Tax Court of Indiana.

June 24, 1999.

Curtis J. Dickinson, David L. Pippen, Dickinson & Abel, Indianapolis, Indiana, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Heart City Chrysler (Heart City) appeals the final determinations of the State Board of Tax Commissioners (State Board) fixing the assessed value of one parcel of real estate it owned located in Elkhart County, Indiana as of March 1, 1990, 1991 and 1995.

### ISSUES

I. Whether the State Board's decision to change the physical depreciation factor as a result of a *sua sponte* assessment was erroneous.

II. Whether the State Board's final determinations with respect to the grade assigned to the subject properties lacked substantial evidentiary support.

III. Whether the State Board's final determinations with respect to obsolescence depreciation lacked substantial evidentiary support.

### FACTS AND PROCEDURAL HISTORY

Heart City [1] owns one parcel of real estate located in Elkhart County, Indiana. The parcel consists of land and improvements.[2] This parcel is designated as # 24–05–01–200–0031(Parcel 31).[3] On June 28, 1991, August

---

1. Heart City is an Indiana corporation with its principal place of business in Elkhart County, Indiana. Heart City is engaged in the selling and servicing of automobiles.

2. The buildings that are owned by Heart City on Parcel 31 are used as office space, show rooms, and service centers.

3. For the 1990 and 1991 appeals, the parcel was identified as 24–05–01–200–008. For the 1995 appeal, the same parcel was identified as 24–05–01–200–031. In this opinion, the parcel will be identified as 24–05–01–200–008 for all years in issue (Parcel 31).

4, 1992, and August 4, 1996, Heart City filed three Form 131 [4] petitions for the tax years 1990, 1991, and 1995. These petitions challenged the assessments for Parcel 31.

Hearings on these petitions were held on May 30, 1996 and on July 28, 1997 in Elkhart County. The State Board issued its final determinations with respect to the Form 131 petitions on November 22, 1996 and October 29, 1997. In its final determinations, the State Board made adjustments to the earlier assessments. Deeming the adjustments made by the State Board to be erroneous, Heart City filed this original tax appeal on January 3, 1997. On May 18, 1998, the parties tried this case before this Court. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The State Board is afforded great deference when it acts within the scope of its authority. *See King Indus. Corp. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 338, 339 (Ind. Tax Ct.1998). Accordingly, the Court will reverse a final determination made by the State Board only when that determination is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *See id.*

### Discussion

I. The State Board's *Sua Sponte* Assessment of the Subject Property.

Heart City takes issue with the State Board's decision to increase the assessed value of the subject property via a *sua sponte* modification of the physical depreciation factor for the tax years 1990 and 1991.[5] Heart City contends that its due process rights were violated as a result of not having the opportunity to rebut the findings provided in the State Board's final determination regarding the *sua sponte* assessment. *See Castello*

4. *See* IND.CODE ANN. § 6–1.1–15–3(a) (West Supp. 1998).

5. The State Board performed a *sua sponte* assessment of the physical depreciation of the subject

*v. State Bd. of Tax Comm'rs,* 638 N.E.2d 1362, 1364 (Ind. Tax Ct.1994).

■ However, the Court need not reach this issue because the Court finds another issue dispositive: Whether the State Board complied with IND.CODE ANN. § 6–1.1–30–12 (West 1989) (amended 1997, effective Jan. 1, 1999) in issuing its final determination. Section 6–1.1–30–12 states:

Sec. 12. With respect to a review conducted by a field representative or supervisor under section 10 of this chapter or a hearing conducted by a hearing officer under section 11 of this chapter, the field representative, supervisor, or hearing officer shall submit a written report of his findings to the state board of tax commissioners. After reviewing the report, the board may take additional evidence or hold additional hearings. The board shall base its final decision on the report, any additional evidence taken by the board, and any records that the board considers relevant.

In the case at bar, Heart City contended at the administrative hearing that one of the subject improvements, the 1,248 square foot used car sales office (built in 1986) should receive "10% for physical depreciation." (Pet'r Ex. 1). Subsequent to the hearing, the State Board's hearing officer inspected Heart City's property, agreed with Heart City's contentions, and recommended that the used car sales office receive a total physical depreciation factor of 10%. The State Board adopted the recommendation and granted Heart City a total factor of 10% for physical depreciation in its final determination.

■ The State Board then proceeded with a *sua sponte* assessment of another building, a structure built in 1966 (1966 structure). Heart City did not raise the issue of physical depreciation with respect to the 1966 structure in its petition or at the administrative hearing, nor did the hearing officer give any indication to Heart City that he would make a recommendation to the State Board re-

properties only for the 1990 and 1991 tax years, not for the 1995 tax year.

garding the 1966 structure.[6] At trial, the hearing officer stated that he did not make a recommendation regarding the 1966 structure. (Trial Tr. at 11). After the *sua sponte* assessment, Heart City found itself with a 35% physical depreciation factor [7] applied to the 1966 structure,[8] which resulted in an increased assessment.

 The State Board is correct in its assertion that it may conduct a *sua sponte* assessment to "address and correct" all errors not raised in a taxpayer's petition for review pursuant to section 6–1.1–15–4.[9] *See Wirth v. State Bd. of Tax Comm'rs*, 613 N.E.2d 874, 879 (Ind. Tax Ct.1993). However, in doing so, the State Board must also adhere to the strictures of section 6–1.1–30–12. In this case the State Board did not.

The Court is unable to determine from the record the basis of the State Board's findings with respect to the 1966 structure. In addition to the hearing officer's failure to submit a written report regarding the 1966 structure, the record is also devoid of any information that would indicate to the Court that the 35% physical depreciation factor was based on any relevant records, or any additional evidence taken by the State Board. The State Board's failure to adhere to the requirements of section 6–1.1–30–12, invali-

dates the State Board's final determination. Accordingly, the State Board's final determination is reversed and remanded.

## II. Grade

 Heart City complains that because the regulations governing grade have no ascertainable standards any final determination of grade must be reversed. *See* IND. CONST. art. I, § 12; *Harrington v. State Bd. of Tax Comm'rs*, 525 N.E.2d 360, 362 (Ind. Tax Ct.1988). Despite the fact that the regulations governing the 1995 general reassessment were declared unconstitutional [10] and the regulations governing the 1990 and 1991 assessments are almost identical to those regulations, this Court has held that the mere fact that a subject improvement may have been assessed under an unconstitutional regulation does not guarantee a reversal of a State Board final determination. *See Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d at 1104. This is true because "[r]eal property must still be assessed, and, until the new regulations are in place, must still be assessed under the present system." *Whitley Prods., Inc.*, 704 N.E.2d at 1121.

 Although Heart City correctly identifies the shortcomings of the regulations governing grade, this Court has also held

---

6. The Court notes that in the past, the State has informed the taxpayer as to an increase in the assessment and has provided the taxpayer with an opportunity to offer evidence on the issue. *See Joyce Sportswear Co. v. State Bd. of Tax Comm'rs*, 684 N.E.2d 1189, 1190 (Ind. Tax Ct.1997), *appeal dismissed*. This eminently reasonable procedure allows the taxpayer to do so before an original tax appeal.

7. The physical depreciation factor is based on the subject improvement's age, condition, and structure type. *See Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1099, 1103 (Ind. Tax Ct.1999) (citing IND ADMIN. CODE tit. 50, r. 2.1–5–1 (1992)) (codified in present form at *id.* r. 2.2–12–4(c) (1996)), *petition for review filed*, Mar. 20, 1999. This percentage is calculated by determining the age and condition of the improvement and then "consulting the economic life table corresponding to the structure type of the improvement." *See id.* The regulations provide assessors with seven "levels of condition" that range from Excellent to Very Poor that can be assigned to the improvement that is being assessed. *See* IND ADMIN. CODE tit. 50, r. 2.1–5–1 (1992). The level of condition assigned to the subject im-

provement at issue was "AV" or Average. (Resp't Ex. B). Thus, when the percentage factor is altered it follows logically that one or more of the three components of physical depreciation (i.e., level of condition, life table, age) was altered.

8. Although the Findings of Fact and briefs are silent as to the original physical depreciation factor applied, at trial, Mr. Drew Miller, a witness for Heart City, testified (undisputed) that the State Board subtracted 10% from the original depreciation factor. Thus, the original physical depreciation factor applied was 45%. (Trial Tr. at 34).

9. It is not an abuse of discretion if the State Board chooses to do so. *See Wirth*, 613 N.E.2d at 879. However, an opportunity to meet and rebut adverse evidence is one of the "minimum requirements of due process in an administrative hearing." *See id* at 1365.

10. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998), *review denied; Dana Corp. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1244, 1247 (Ind. Tax Ct.1998).

that a taxpayer may not simply point out the inadequacies of the regulations governing grade and expect to secure a reversal. *See White Swan Realty v. State Bd. of Tax Comm'rs*, 712 N.E.2d 555, 559 (Ind. Tax Ct.1999) (citing *Phelps Dodge*, 705 N.E.2d at 1104), *petition for review filed*, Jun. 23, 1999; *Town of St. John v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1387 (Ind. Tax Ct.) (order and judgment entry), *rev'd in part, aff'd. in part*, 702 N.E.2d 1034 (Ind.1998); *Whitley Prods., Inc.*, 704 N.E.2d at 1121; *Dana Corp.*, 694 N.E.2d at 1247. This Court has consistently required more on the part of the taxpayer. The taxpayer must offer probative evidence relating to the issue of grade. *See Whitley Prods., Inc.*, 704 N.E.2d at 1121. In this case, instead of presenting probative evidence Heart City presented only conclusions that referenced grade factors. For example, as part of its presentation, Heart City submitted photographs without adequately explaining how they affect grade. However, this Court has rejected attempts by taxpayers to put forth evidence such as photographs without explanations. *See Whitley Prods., Inc.*, 704 N.E.2d at 1119–20 & n. 12; *see also North Park Cinemas v. State Bd. of Tax Comm'rs*, 689 N.E.2d 765, 769 (Ind. Tax Ct.1997) ("A party who stands to be adversely affected by a petition for review has an obvious responsibility to ... present evidence and *argument* in support of its position.") (emphasis added). Also, for one of the subject properties, the auto service center, Heart City concluded that it should receive a grade of C–1 for the reason that it is "inferior to the base model described in the assessment manual." (Pet'r Ex. 1). Heart City fails to show, however, how the subject property is inferior to the base model.[11] Likewise, with respect to another subject property, the auto showroom, Heart City asserts that a "grade of C+1 more accurately describes the overall quality of the [showroom]" without explaining why or offering any evidence to support its assertions. (Pet'r Ex. 1). These statements are conclusory, and this Court will not substitute conclusory statements for probative evidence.[12] *See Whitley Prods., Inc.*, 704 N.E.2d at 1119.

Moreover, in Petitioner's Exhibit 2, Heart City asserts more conclusions and also includes a photocopy of the model and the regulations with variances from the model highlighted. Yet Heart City fails to present evidence as to what exactly the variances are. Heart City's trial testimony was similar to the documentary evidence presented in that it offered only conclusions. Some specific items regarding grade were testified to at trial, but there was no effort made to show how they affect the grade of the parcels under consideration. Heart City's presentation to this Court fails to meet any burden because it consists entirely of conclusions.

Because Heart City has failed to present probative evidence to the State Board that identify and explain all items that relate to grade the Court affirms the final determinations of the State Board on the issue of grade.

### III. Obsolescence

▆ Heart City argues that the State Board's final determinations with respect to the issue of obsolescence are in error. In *Clark*, this Court held that when an assessor determines obsolescence, a two-step inquiry is required. First, the assessor must identify the causes of obsolescence, and second, the assessor must quantify the amount of obsolescence to be applied. *See Clark*, 694 N.E.2d at 1238.

▆ In this instance, the parties agree that there are causes of obsolescence, thus the only issue for this Court's review is the issue of quantification.[13] However, with re-

---

11. The Court understands that this may be "easier said than done." However, the taxpayer is not precluded from offering evidence that demonstrates the inferiority of that improvement as compared to the base model. *See Whitley Prods., Inc.*, 704 N.E.2d at 1119–20 n. 12.

12. *Cf. Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1239 n. 13 (Ind. Tax Ct.1998)

("One would think that, in cases where there is little guidance on what kinds of evidence are to be considered, prudent litigants would err on the side of offering more evidence rather than less evidence.").

13. The State Board determined that the subject improvements suffered obsolescence; therefore,

spect to the issue of quantification, neither party presented adequate evidence. Both parties fail to support their attempts at quantification with any evidence or explanation as to how the methodology is appropriate or how the attempts at quantification correlate to the causes of obsolescence. *See Phelps Dodge*, 705 N.E.2d at 1103. Although the regulation that governs obsolescence provides little or no guidance on how to quantify obsolescence in a particular improvement, this does not obviate the State Board's burden of supporting quantification of obsolescence with substantial evidence. *See id.* at 1102. Although more information is provided in the State Board's final determination than that which is usually provided, it still falls short of substantial evidence in that it fails to provide this Court with an adequate explanation as to why it granted a 10% obsolescence factor as opposed to any other factor. *See Clark*, 694 N.E.2d at 1240. Thus, the findings submitted by the State Board fail to rise to the level of substantial evidence and, as a result, reversal is mandated.

■ Recently, this Court affirmed a State Board finding that an improvement did not suffer from obsolescence where the taxpayer presented no evidence of obsolescence. *See White Swan Realty*, No. 49T10–9701–TA–00019, slip op. at 9. Thus, in similar cases, the responsibility of offering evidence proving causes of obsolescence rests with the taxpayer. *See id.; see also Lake County Trust Co. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1253, 1258 (Ind. Tax Ct.1998), *review denied.* However, in this case, it is undisputed that the subject improvements suffer from obsolescence. Thus, Heart City is relieved from the "burden of offering probative evidence showing that the subject improvements experience obsolescence." *See Phelps Dodge*, 705 N.E.2d at 1102. This negates the State Board's reliance on the notion that the taxpayer has to prove that the State Board is incorrect with respect to its findings. In

cases such as this, the question becomes whether the State Board's quantification of obsolescence is supported by substantial evidence. As stated above, it is not.

In *Clark*, this Court noted its frustration in cases where both parties failed to properly quantify obsolescence. Without proper guidance from the regulation governing obsolescence, the State Board and taxpayer were left to argue about the quantification of a particular improvement's obsolescence with no means of supporting their respective views with any evidence. As a result, in *Clark*, this Court announced a prospective rule that required taxpayers to quantify obsolescence at the administrative level with generally accepted appraisal techniques at the administrative level. In this case, Heart City did not do so; however, because the hearing in this case took place before the date of the *Clark* opinion, Heart City was not required to quantify the obsolescence of the subject improvements with generally accepted appraisal techniques. On remand, however, Heart City will be required to do so.

Accordingly, the issue of obsolescence is remanded for further proceedings consistent with this opinion and this Court's opinion in *Clark*.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the State Board's final determination with respect to issue II. The Court REVERSES and REMANDS the State Board's final determination with respect to issues I and III for further consideration consistent with this opinion.

the State Board must have concluded that the

subject improvements suffered from causes.