**STERLING MANAGEMENT–ORCHARD RIDGE APARTMENTS, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 49T10–9701–TA–41.

Tax Court of Indiana.

June 26, 2000

---

Curtis J. Dickinson, Dickinson & Abel, David L. Pippen, Indianapolis, IN, Attorneys for Petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Petitioner Sterling Management–Orchard Ridge Apartments (Sterling) appeals the final determination of the State Board of Tax Commissioners (State Board) denying Sterling's request to lower the assessed value of its property as of the March 1, 1993 assessment date. In this original tax appeal, Sterling presents the following issues for the Court's review:

I. Whether the State Board improperly assessed a retaining wall on the subject property;

II. Whether the State Board erroneously valued iron fencing on the subject property, where the State Board's regulations do not assign values to such fencing; and

III. Whether the State Board incorrectly assigned a grade of C plus one to Sterling's apartment complex.[1]

## FACTS AND PROCEDURAL HISTORY

Sterling is a corporation with its principal place of business in Kosciusko County, Indiana. Sterling owns parcel number 003–15001–93, upon which is located an apartment complex known as the Orchard Ridge Apartments. Local assessing officials valued the subject property's land and improvements at a total value of $897,670 for the March 1, 1993 assessment date. Sterling filed a Form 130 petition for review with the Kosciusko County Board of Review (BOR) on September 8, 1993, claiming that an incorrect grade of C plus one was assigned to the subject improvement. On June 17, 1994, the BOR affirmed the subject improvement's assigned grade.

Thereafter, on July 28, 1994, Sterling filed a Form 131 petition for review with the State Board. In the petition, Sterling stated that the subject improvement's grade was "excessive based on materials used for construction [and] should be C−2 [instead of] C+1." (Def's Ex. A at 3.) The State Board held a hearing on the petition on November 28, 1995. In its final determination, dated November 22, 1996, the State Board lowered the subject property's total assessed value to $885,870. It did not alter the subject improvement's

---

1. Sterling raises one additional issue not considered by the Court: whether the State Board's assessment regulations violate both the United States Constitution and the Indiana Constitution. However, the fact that the subject property was assessed under an unconstitutional regulation does not mean the assessment will be invalidated on that basis. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998) (citations omitted), *review denied.* "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id. See also Town of St. John v. State Bd. of Tax Comm'rs,* 729 N.E.2d 242, 246 & 251 (Ind. Tax Ct.2000) (ordering that all real property in Indiana shall be reassessed under new, constitutional rules as of March 1, 2002, and, until then, real property tax assessments shall be made in accordance with the current system). Therefore, the Court will not address the constitutionality issue.

grade. Instead, the lowered assessment resulted from a change in the subject property's land classification and from a downward adjustment of iron fencing on the property.

Sterling filed an original tax appeal with this Court on January 3, 1996. Sterling filed a motion for summary judgment on January 30, 1998; the motion was denied on May 11, 1998. The Court conducted a trial in this matter on September 30, 1998.

Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

 This Court gives the final determinations of the State Board great deference when the State Board acts within the scope of its authority. *See Wetzel Enters., Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *See id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

### Discussion

The Court will consider each of Sterling's issues in turn.

#### I. *Retaining Wall*

Sterling contends that the State Board improperly assessed a retaining wall on the subject property. According to Sterling, Mr. Gary Utt (Utt), the State Board's Hearing Officer in this matter, admitted that he could not identify a retaining wall on the property and would not have assigned a value to any retaining wall that may have been present. Sterling argues that, because Utt admitted that no value should be assigned to any retaining wall, the issue should be remanded to the State Board for a correction of error. Sterling essentially complains that the State Board's final determination on this issue was not supported by substantial evidence or, in the alternative, was arbitrary and capricious.

 It is the taxpayer's responsibility to provide the State Board with probative evidence demonstrating a claimed error in assessment. *See Herb v. State Bd. of Tax Comm'rs*, 656 N.E.2d 890, 894 (Ind. Tax Ct.1995) (observing that taxpayer failed to offer any evidence that State Board acted arbitrarily in classifying his property); *see also Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998) ("[T]he taxpayer must offer probative evidence concerning the alleged error.") (citations omitted), *review denied*; *Kemp v. State Bd. of Tax Comm'rs*, 726 N.E.2d 395, 400 (Ind. Tax Ct.2000) (stating that when property's grade is challenged, "taxpayer must offer probative evidence concerning the alleged assessment error"). Probative evidence is evidence that "tends to prove or disprove a point in issue." BLACK'S LAW DICTIONARY 579 (7th ed.1999). Where the taxpayer fails to provide the State Board with probative evidence supporting its position regarding an alleged error, the State Board's duty to support its final determination on that issue with substantial evidence is not triggered. *See Whitley Prods.*, 704 N.E.2d at 1119–20. A taxpayer's conclusory statements are not probative evidence. *See id.* at 1119.

 "Yard improvements" are "improvements to the property that generally are detached from the principal building, and are recorded and priced separately." IND. ADMIN. CODE tit. 50, r. 2.1–4–3(g) (1992) (codified in present form at *id.*, 2.2–12–2(a) (1996)). Only those yard improvements that "add value to the property and that are not included in land improvements are included in the replacement cost schedule."

*Id.*, r. 2.1–4–3(g)(2) (codified in present form at *id.*, 2.2–12–2(a) (1996)). The State Board's regulations include values to calculate the replacement costs of yard improvements, including values for retaining walls. *See id.*, r. 2.1–4–5 (1992) (Schedule G) (codified in present form at *id.*, r. 2.2–12–5 (1996)). A retaining wall is a "wall designed primarily to withstand lateral pressures of earth or other filling or backing deposited behind it after construction." *Id.*, r. 2.1–6–1 (codified in present form at *id.*, r. 2.2–16–2(77) (1996)). Retaining walls are "to be considered only if they add value as an improvement over and above the curing contribution considered in the site valuation." *Id.*, r. 2.1–4–5. To prove that the State Board's assessment of the retaining wall was improper, Sterling was obligated to submit evidence of probative value to the State Board showing that the retaining wall in question was not present, was present but added no value as an improvement over and above the curing contribution considered in the site valuation[2] or was present and had a value different from its assessed value.

■ The evidence presented at trial by Sterling was scant. The State Board's final determination, a copy of which was admitted into evidence as part of the State Board's transcript of proceedings, simply stated, "the retaining wall has been correctly identified and priced." (Def.'s Ex. A at 15.) Also admitted into evidence was a document titled "Assessment Review and Analysis," prepared by Mr. M. Drew Miller (Miller) of Landmark Appraisals, Inc. Under its "List of Contentions," this document asserted, "The cost for the retaining wall should be removed as it does not 'add value as an improvement over and above the curing contribution considered in the

site valuation', per Schedule G, Page 17[7]." (Def.'s Ex. B at 4.) During trial, the following exchange took place between Sterling's counsel and Utt:

Q: Did you price a retaining wall on the subject property?

A: A retaining wall was priced on the property record card, yes.

Q: And how did you make a determination that this retaining wall added value to the property?

A: I'm not so sure that it did, that it added value. I didn't disagree with the value shown on the property record card. However, I must say, if I remember correctly, the value assigned some $1400. Sitting here today I do not remember a retaining wall. There might have been a cur[b] or something. If I [were] doing it today, I would not have assigned a value to that retaining wall.

(Trial Tr. at 13–14.)

The evidence presented does not prove that no retaining wall existed. Utt admitted that, at the time, he did not disagree with the value assigned to the retaining wall on the property record card. Moreover, he could not recall whether a retaining wall was present. These statements fall short of demonstrating that no retaining wall existed.

■ Furthermore, assuming the retaining wall was present, the testimony does not constitute probative evidence as to what value, if any, should have been assigned to it. The final statement by Utt is speculative at best. It is a conclusory observation that does not represent proof that the retaining wall had no value. Likewise, Miller's contention that the re-

---

**2.** The regulations do not explain and the parties do not elaborate on the requirement that a retaining wall add value beyond its "curing contribution considered in the site valuation." IND.CODE ANN. § 2.1–4–5. In reference to legal issues, to "cure" means the act of correcting "any defect or deficiency." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 163 (1987). By definition, retaining walls are designed to withstand certain lateral pressures. The "curing contribution" of a retaining wall references the wall's function in countering the defects or deficiencies (i.e., lateral pressures from earth, filling or backing) that it is designed to withstand.

taining wall adds no value to the subject improvement is conclusory.[3] Miller's assertion lacks any factual basis whatsoever.

The statements offered by Sterling do not constitute probative evidence regarding either the existence or value of the retaining wall. Therefore, the State Board's duty to support its final determination with substantial evidence was never triggered. Moreover, Sterling's argument does not demonstrate that the State Board's final determination was arbitrary and capricious. The State Board's final determination as regards assessment of the retaining wall is AFFIRMED.

## II. *Iron Fencing*

▮▮▮▮▮ Sterling argues that the State Board's assessment of its iron fencing at thirty-two dollars per linear foot was erroneous, because the assessment regulations contain no values for iron fencing. According to Sterling, "One cannot image a more blatant failure to support an assessment with reason or evidence than the State Board's admission that it basically made up a figure it wished to apply." (Pet'r Post–H'rg Br. at 5.) Thus, Sterling maintains that the State Board's final determination, with respect to the value assigned to the iron fencing on the subject property, was arbitrary and capricious.

Values for iron fencing are nowhere to be found in the State Board's assessment regulations. IND. ADMIN. CODE tit. 50, r. 2.1–4–5 (1992) (Schedule G) (codified in present form at *id.*, r. 2.2–12–5 (1996)) provides values for chain link (galvanized and aluminum) and wood fencing but not iron fencing. The State Board lowered the assigned value for the fencing from forty to thirty-two dollars per linear foot, which resulted in a reduction of Sterling's assessment. At trial, Counsel for Sterling

and Hearing Officer Utt had the following exchange:

Q. Using the real property assessment Manual you got there, could you open to the section that discussed the pricing for iron fencing?

A. No, I don't believe I could. I don't believe it was in the Manual. I tried to use something that ... was representative of what I saw in the field.

Q. What is the basis for the $32 a lineal foot?

A. I don't know. When it became $32 per lineal foot it was my opinion that was dictated to me, that I shall use $32, based on what the State said.

Q. And that is not to be found in [the Manual]?

A. I don't believe it is. I believe that is something that [the State Board] felt was fair and reasonable.

(Trial Tr. at 12–13.) Although the State Board's valuation lowered the assessed value for the fencing, the State Board provided no explanation for the change. In its final determination, the State Board simply states that, "It is determined that the fence price should be changed to $32 per linear foot." (Def.'s Ex. A at 15.)

Noting that Indiana does not value property based on its market value and that the State Board is generally not obligated to consider a taxpayer's cost data when reviewing an assessment,[4] the Court on Feb. 21, 2000 invited the State Board to submit a supplemental brief identifying what regulations or other authority governs the valuation of iron fencing and explaining precisely how the iron fencing's value was calculated in the present case.

3. Miller's statement that the retaining wall added no value is an implicit recognition on his part that a retaining wall was in fact present on the subject property.

4. Rather, the assessed value of property is based on its reproduction cost as determined by the State Board's regulations. *See* IND.

CODE ANN. § 6–1.1–31–6(c) (West 2000); *Kemp,* 726 N.E.2d at 403 (string citation omitted). *But cf. Barker v. State Bd. of Tax Comm'rs,* 712 N.E.2d 563, 572 (Ind. Tax Ct.1999) ("However, evidence of actual reproduction cost may have relevance in certain cases.") (citations omitted).

On March 16, 2000, the State Board submitted its supplemental authority. It relied upon the Affidavit of Gordon E. McIntyre, the State Board Commissioner who reviewed and approved Sterling's final assessment determination. McIntyre's affidavit, in turn, cited and attached copies of: (1) a "question and answer" memorandum (Memo); (2) one page of Marshall and Swift Company's RESIDENTIAL COST HANDBOOK (1983) (Handbook); and (3) one side of Sterling's property record card. The State Board offered the following narrative in support of its position that the fencing should be valued at thirty-two dollars per linear foot:

> It is acknowledged that the applicable regulations of the State Board for assessment of real property from 1989 through 1993 contained no specific values for iron fences. In order to meet its obligation to assess all property that should be assessed, the State Board relied upon a "question and answer" memorandum it had sent out to all local assessors. The memorandum states that four foot high iron fence should be valued at $32 per linear foot. This value is consistent with the lowest value stated by Marshall & Swift Valuation Service, which is $8 per square foot. The State Board simply multiplied the $32 times 226 feet and rounded the result to $7200 to calculate the true tax value of this fence. Sterling presented no evidence upon which to base a value. Because the State Board's calculation is favorable to Sterling and based upon the lowest value figure, it should be sustained by the Tax Court.

(Resp't Supp. Authority at 2.)

The Memo is the basis for the State Board's valuation of the iron fencing. The Memo, dated April 10, 1989, was sent from the State Board to all local assessors. Its introductory paragraph reads, "At the conference held in late January, 1989, question and answer sessions were held. This memorandum catalogues the questions and answers. Unless otherwise indicated, the answers are responsive to specific circumstances and should not be applied beyond those circumstances." Question and answer number forty-three states as follows:

Q: How are the following valued: (a) commercial wrought iron fencing[?]

A: (a) *Iron fencing* — 4' high $32 P.L.F.; 6' high $48 P.L.F.; 8' high $64 P.L.F.; 10' high $80 P.L.F.; 12' high $96 P.L.F.

(Memo at 7.)

Along with the Memo, the State Board submitted a copy of page C–1 of the Handbook. This page is in the "Yard Improvements" section of the Handbook and shows the Unit–in–Place Costs for fencing and patio roofs and enclosures. It lists the cost range for "Hand forged wrought iron" metal fences as eight dollars to sixteen dollars twenty-five cents per square foot.

Sterling submitted its Reply to the State Board's supplemental authority on April 24, 2000. Sterling reasons that, because the State Board's regulations determine a property's "true tax value" yet assign no value to iron fencing, the iron fencing has no "true tax value." (Pet'r Reply to Supp. Authority at 2.) Sterling points out that the State Board knew of the regulation's deficiency as regards iron fencing but failed to properly revise its regulations or even to issue an instructional bulletin for taxing officials. The State Board, according to Sterling, violated due process principles by providing no notice to the public of its decision to use market value in assessing iron fencing. Therefore, Sterling maintains that the issue must be remanded with instructions to remove any assigned value to the fencing.

■■■■ "Under Indiana's ascertainable standards rule, all administrative decisions must be in accord with previously stated, ascertainable standards." *Boaz v. Bartholomew Consol. Sch. Corp.,* 654 N.E.2d 320, 323 (Ind. Tax Ct.1995). The ascertainable standards requirement ensures that administrative decisions are "fair, orderly and consistent rather than irrational and

arbitrary." *Garcia v. State Bd. of Tax Comm'rs*, 694 N.E.2d 794, 796 (Ind. Tax Ct.1998) (quoting *Podgor v. Indiana Univ.*, 178 Ind.App. 245, 258, 381 N.E.2d 1274, 1283 (1978)). To satisfy the ascertainable standards rule, standards must be written with sufficient precision to give fair warning as to what factors an agency will consider in making an administrative decision. *See Mechanics Laundry & Supply, Inc. v. Indiana Dep't of State Revenue*, 650 N.E.2d 1223, 1233 (Ind. Tax Ct.1995) (citing *Podgor*, 178 Ind.App. at 258, 381 N.E.2d at 1283). Moreover, standards should also be readily available to those who have potential contact with the administrative body.[5] *See id.*

 The State Board's actions violate the ascertainable standards requirement. The State Board's assessment regulations provide *no* standards whatsoever with respect to valuing iron fencing. *Cf. Garcia*, 694 N.E.2d at 797–98 (finding State Board's assessment arbitrary and capricious, where regulations provided no definitions or guidelines for differentiating between "A" and "A + 10" grade dwellings). Thus, there is no previously announced standard for the State Board to apply in assessing the iron fencing. More-

over, Sterling certainly had no fair warning that the State Board would rely upon market information from the Handbook to assess the fencing. As noted *supra* note four, in Indiana a property's reproduction cost is determined by referring to the State Board's regulations, not market information. Sterling could not have reasonably known that the State Board would use market information, i.e., the Handbook, in assessing its iron fencing. In this case, the State Board provided *no* warning that it would consider market information. No warning falls far short of being fair warning. Finally, the State Board's standards were not readily available to Sterling. The Memo is neither a regulation[6] nor an informational bulletin;[7] by its own terms, the document was responsive (unless otherwise stated) *only* to "specific circumstances and should not be applied beyond those circumstances."[8] (Memo at 1.) The State Board could not have expected Sterling to have access to or possess knowledge of the Memo. Moreover, even if Sterling did know about this Memo from April of 1989, it would not have been expected to know that it applied to the 1993 assessment of the iron fencing. In addition, the State Board contends that the

5. This Court has posited, "The ascertainable standards requirement is actually a hybrid mix of procedural (fair warning) and substantive (consistent rather than irrational) due process, which has developed in Indiana. This idea implies that government agencies and the courts themselves must operate according to known rules and procedures." *Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 384 (Ind. Tax Ct.1997), *rev' d in part on other grounds*, 702 N.E.2d 1034 (Ind.1998). *See also* IND. CONST. art. 1, § 12 (due course of law provision).

6. *See* IND.CODE ANN. § 4–22–2–3 (West 1999) (defining "rule" and "rulemaking action"). *See generally* IND.CODE ANN. §§ 4–22–2–23 to – 36 (West 1991 & Supp.1999) (statutes governing rulemaking process).

7. IND. ADMIN. CODE tit. 50, r. 4.2–1–5 (1992) (codified in present form at *id.* (1996)) provides:
 (a) Issuance. The state board may issue instructional bulletins. The instructional bulletins ... will be utilized to instruct tax-

ing officials of their duties and provide administrative forms to be used by taxpayers, local and county officials as required by various rules of the state board....
 (b) Availability. Copies of instructional bulletins issued pursuant to this article (50 IAC 4.2) may be obtained for a fee of twenty-five cents ($.25) per page plus mailing costs....

8. The Court notes that a "question and answer" memorandum is not a substitute for regulations. Regulations have been promulgated only after having undergone the scrutiny of the rulemaking process, while answers in a memorandum may not be subjected to any review or consideration beyond that of the document's drafter. However, this is not to say that such memorandums are irrelevant to the assessing process. While not controlling of any particular assessment issue, memorandums from the State Board assist assessing officials in interpreting the regulations.

Memo's value for iron fencing is "consistent" with that found in the Handbook. However, the Memo never references the Handbook. While Marshall and Swift's Handbook may be a widely accepted and respected valuation source, Sterling should have had the opportunity to challenge the accuracy of the Handbook's assigned value or to offer its own competing evidence of the fencing's value. This is especially true considering that the Handbook is copyrighted a full decade before the assessment year in question.

The State Board's actions in assessing Sterling's iron fencing are troubling, if not egregious. Basic principles of due process require the State Board to establish identifiable standards in assessing property and to have those standards published and accessible. In the present case, the State Board failed to promulgate regulations for assessing iron fencing. To correct that error, it may not simply refer to market concepts when it is convenient to do so without giving the taxpayer an opportunity to respond. Therefore, the Court finds that the State Board's assessment of Sterling's iron fencing was arbitrary and capricious.

■ Sterling would have the Court remand and order the State Board to assign no value to the iron fencing. However, real property must be assessed. *See Whitley Prods.*, 704 N.E.2d at 1121. The State Board asserts that the iron fencing's assessment should be affirmed because its valuation is "favorable" to Sterling and because Sterling offered no evidence regarding the value of the iron fencing. The Court refuses to rubber-stamp the State Board's improper assessment. Sterling must be given the opportunity to respond with evidence as to the fencing's value. *Cf. Wirth v. State Bd. of Tax Comm'rs*, 613 N.E.2d 874, 879 (Ind. Tax Ct.1993) ("The State Board simply has no power to take

action affecting a taxpayer's property without giving the taxpayer notice and an opportunity to be heard....") Therefore, on the issue of the iron fencing's valuation, the State Board's final determination is REVERSED and this cause REMANDED to the State Board. The State Board is instructed to conduct a hearing on this issue, during which it shall accept and consider any objectively verifiable evidence submitted by Sterling as to the iron fencing's value.[9]

### III. *Grade*

■ Sterling claims that the State Board's assignment of a C plus one grade to the subject improvement was not supported by substantial evidence. In its final determination, the State Board found that the "grade of C + 1 is correct based upon the specifications outlined in 50 IAC 2.1–4–3(f)." (Def.'s Ex. A at 15.) The Court need not discuss whether the State Board's decision is supported by substantial evidence, because Sterling points to no probative evidence of record indicating what the correct grade should be.

■ When a taxpayer contests the grade assigned to an improvement, it must offer probative evidence concerning the alleged assessment error. *See Herb*, 656 N.E.2d at 894; *Whitley Prods.*, 704 N.E.2d at 1119; and *Kemp*, 726 N.E.2d at 400. A taxpayer's conclusory statements do not constitute probative evidence concerning the grading of the subject improvement. *See Whitley Prods.*, 704 N.E.2d at 1119. Furthermore, mere references to photographs or regulations, without explanation, do not qualify as probative evidence. *See Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999); *Kemp*, 726 N.E.2d at 400. Where the taxpayer fails to provide the State Board with probative evidence supporting its position on the grade issue, the

---

**9.** The Court reminds Sterling that a "party who stands to be adversely affected by a petition for review has an obvious responsibility to appear before the State Board and present evidence and argument in support of its position." *North Park Cinemas v. State Bd. of Tax Comm'rs*, 689 N.E.2d 765, 769 (Ind. Tax Ct.1997).

State Board's duty to support its final determination with substantial evidence is not triggered. *See Whitley Prods.*, 704 N.E.2d at 1119–20.

Sterling submitted little evidence as to the subject improvement's grade. In his "Assessment Review and Analysis," Miller provided four photographs showing different parts of the subject improvement. (Def.'s Ex. B at 2–3.) The photographs were not captioned. In his self-styled "analysis," Miller remarked, "The grade of D+1 on the subject property more accurately reflects the quality of materials and workmanship. Also note that the model assumes 9' wall height on the 2d floor. The subject is 8' on the 2nd floor." (Def.'s Ex. B at 4.) In addition, Miller's analysis included copies of pages three and four from Rule 3 of the 1989 Indiana Real Property Assessment Manual (Regulation 17). Page three describes the C and D grades. Page four is titled "grade specification table" and lists the basic structural characteristics assigned to C and D grade residential improvements. (Def.'s Ex. B at 6–7.) Most of the specifications in the D grade column on this table are highlighted with a pink marker. Utt testified that he understood the highlighted specifications to represent the deficiencies in the subject improvement. (Trial Tr. at 22.) He assumed that Miller had made the marks but indicated that Miller had not explained the meaning of the marks. (Trial Tr. at 23.) During trial, counsel for Sterling questioned Utt as to whether the State Board's regulations defined or provided standards for the terms describing a C grade. (Trial Tr. at 8–12, 19, 25.) Utt basically responded that the regulations provided no specific definitions or standards. (Trial Tr. at 9–12, 19, 25.)

 Sterling failed to meet its burden of production in this case. Its submissions to the State Board and to this Court do not constitute probative evidence. The uncaptioned photographs in Miller's analysis, without further explanation, do not show what the subject improvement's grade should be. *See Heart City Chrysler*, 714 N.E.2d at 333 ("[T]his Court has rejected attempts by taxpayers to put forth evidence such as photographs without explanations."). Miller opined that a grade of D plus one is appropriate. However, he did not clarify how the subject improvement's features better resemble the D grade characteristics in the grade specification table. As Utt pointed out, Miller neither explained the highlighted marks nor attended Utt's physical examination of the subject improvement. (Trial Tr. at 23.) Apparently, Miller expected Utt to ascertain, accept and apply Sterling's entire argument from the mere presence of the highlighted marks and the remainder of his analysis. Unfortunately for Sterling, State Board hearing officers are not obligated to make a case for the taxpayer. *See Whitley Prods.*, 704 N.E.2d at 1118. Miller's contentions and the highlighted marks are no more than unsupported conclusory statements. *See Kemp*, 726 N.E.2d at 401 (noting that, without further explanation, checkmarks on grade specification table are conclusory). *Accord Bernacchi v. State Bd. of Tax Comm'rs*, 727 N.E.2d 1133, 1136 (Ind. Tax Ct.2000). As noted *supra*, conclusory statements are not probative evidence.[10]

10. Miller stated that the model used to determine the subject improvement's base rate assumes nine-foot wall heights on the second floor, but the subject improvement has only eight-foot wall heights on the second floor. First, Miller does not identify the model used to assess the subject improvement. Second, he fails to explain how the height discrepancy, if true, should affect the subject improvement's grade. Without more, Miller's statement as to the second floor wall height cannot be considered probative evidence. *See Heart City Chrysler*, 714 N.E.2d at 333. *Cf. CDI, Inc. v. State Bd. of Tax Comm'rs*, 725 N.E.2d 1015, 1020 (Ind. Tax Ct.2000) (concluding that testimony provided no insight as to why structure should be classified as a kit building, where witness gave vague description of building and never referenced instructional bulletin).

Although it is not for the Court to explain to taxpayers how to make their cases, *see Monarch Steel Co. v. State Bd. of Tax Comm'rs*, 699

*See Whitley Prods.*, 704 N.E.2d at 1119; *Heart City Chrysler*, 714 N.E.2d at 333. Moreover, questions as to definitions do not constitute probative evidence on the issue of grade; the taxpayer should offer specific evidence tied to the various descriptions of grade classifications. *See Whitley Prods.*, 704 N.E.2d at 1119–20 n. 12; *CDI, Inc. v. State Bd. of Tax Comm'rs*, 725 N.E.2d 1015, 1022 n. 8 (Ind. Tax Ct.2000) (noting that questions as to definitions, the hearing officer's general assessment methodology and instructions for applying assessment standards are not probative evidence). It was imperative that Sterling present probative evidence proving its claim. *See Whitley Prods.*, 704 N.E.2d at 1120 ("[I]t is not too much to ask that a taxpayer present probative evidence concerning the error the taxpayer alleges."). Having failed to present probative evidence as to grade, the State Board was not required to support its final determination on the issue with substantial evidence. The State Board's final determination on the issue of the subject improvement's grade is AFFIRMED.

## CONCLUSION

For all of the aforementioned reasons, the Court hereby AFFIRMS the State Board's final determinations as to Issues I and III. In addition, the Court REVERSES the State Board's final determination as to Issue II and REMANDS the cause to the State Board for further proceedings consistent with this opinion.

---

N.E.2d 809, 812 (Ind. Tax Ct.1998), the Court nevertheless reminds counsel for Sterling that the preferred method of accounting for deviations from the model is to use separate schedules showing the costs of certain components and features present in the model. *See Whitley Prods.*, 704 N.E.2d at 1117 (citations omitted). "This allows an assessor to adjust the base reproduction cost on the improvement objectively." *Id.* Use of grade to account for an improvement's deviation from the model requires the assessor's subjective judgment and, thus, should be avoided. *See id.*