CHAMPLIN REALTY COMPANY,
Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

No. 49T10–9701–TA–47.

Tax Court of Indiana.

March 27, 2001.

David L. Pippen, Attorney at Law, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

■ The Petitioner, Champlin Realty Company (CRC), appeals the Final Determinations of the State Board of Tax Commissioners (State Board) establishing the assessed values for two of its parcels as of March 1, 1993. CRC contests the State Board's denial of obsolescence adjustments for improvements located on these two parcels. The Court finds the following issue dispositive in this matter: whether CRC sufficiently identified causes of func-

tional obsolescence affecting the subject improvements.[1]

## FACTS AND PROCEDURAL HISTORY

CRC owns the two subject parcels, which are located in Elkhart County, Indiana. The two parcels are numbered 01–05–13–251–002 (Parcel # 2) and 01–05–13–277–013 (Parcel # 13). For the 1993 tax year, local assessing officials valued the improvements on Parcel # 2 (a primary building and a 10,860 square foot building) at $564,970 and the improvement on Parcel # 13 at $48,770. No obsolescence adjustments were granted to the improvements. CRC challenged the assessments. The Elkhart County Board of Review (BOR) declined to change the improvements' assessed values. CRC filed a Form 131 Petition for Review of Assessment for each parcel, which the State Board received on January 12, 1994. Following an administrative hearing, the State Board issued two separate Final Determinations. The Final Determination for Parcel # 2 lowered the assessed value of the improvements to $464,630. The lowered valuation resulted in part from the State Board's assignment of a fifteen percent obsolescence adjustment for the primary building and an eighty percent obsolescence adjustment for the 10,860 square foot building. The Final Determination for Parcel # 13 lowered the assessed value

of its improvement to $36,870. The lowered valuation resulted in part from the State Board's assignment of a twenty-five percent obsolescence adjustment to the subject improvement.[2]

CRC appealed both Final Determinations to this Court, filing an original tax appeal on January 3, 1996. The Court held a trial on May 18, 1998. After both parties had filed briefs, the State Board, on January 28, 1999, moved to have the case remanded for further proceedings on the obsolescence issue. The Court ordered the matter remanded to the State Board on February 10, 1999. In its Remand Order, the Court stated:

The Court finds that the record is bereft of any probative evidence which supports either the causes or quantification of functional obsolescence, either that claimed by [CRC] or that granted by the [State Board] in its final determination here under appeal. At best the record contains the conclusions of the parties' witnesses as to causes and quantification but there is nothing in the record that applies the causes to the subject property nor attempts to explain the amount of functional obsolescence that should be granted to the subject property.

For these reasons, the Court finds that the entire issue of functional obso-

1. CRC raises one additional issue not considered by the Court: whether the State Board's assessment regulations violate both the United States Constitution and the Indiana Constitution. The fact that the subject properties were assessed under unconstitutional regulations does not mean their assessments will be invalidated on that basis. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998) (citations omitted), *review denied*. "Real property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." *Id. See also Town of St. John v.*

*State Bd. of Tax Comm'rs*, 729 N.E.2d 242, 246 & 250–51 (Ind. Tax Ct.2000) (ordering that all real property in Indiana shall be reassessed under new, constitutional rules as of March 1, 2002, and, until then, real property tax assessments shall be made in accordance with the current system). Therefore, the Court will not address the constitutionality issue.

2. The values for both parcels were also lowered because portions of the subject improvements consisted of wood joist construction.

lescence should be remanded. Procedures and guidelines set out in *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230 (Ind. Tax Ct.1998) shall apply. The only restriction is that only the issue of functional obsolescence is to be considered.

(Remand Order at 1–2.)

The State Board conducted a remand hearing on March 31, 1999. On May 11, 1999, the State Board issued a Final Determination for each parcel. In the Final Determinations, the State Board denied functional obsolescence adjustments for the improvements. (Ex. B at 32, 58.) The State Board concluded that in both cases CRC failed to "submit probative evidence to support either the existence or quantification of functional obsolescence." (Ex. B at 32, 58.) The State Board further reasoned that because the record was "devoid of probative evidence to either support the existence or quantification of functional obsolescence," the State Board's initial grants of obsolescence could not stand. (Ex. B at 32, 58.) Accordingly, the value of the improvements on Parcel # 2 was increased to $561,130 and the value of the improvement on Parcel # 13 was increased to $47,200.

On July 6, 1999, the Court granted CRC leave to file its amended petition to set aside the Final Determinations. The Court heard oral arguments from the parties on January 5, 2001. Thereafter, the Court took this case under advisement. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

 The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Wetzel Enters.,* *Inc. v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998).

### Discussion

 CRC claims that it presented evidence sufficient to establish a prima facie case as to the causes of functional obsolescence present in its improvements. "Obsolescence, which is a form of depreciation, is defined as a loss of value and classified as either functional or economic." *Freudenberg–NOK General Partnership v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1029 (Ind. Tax Ct.1999), *review denied. See also* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.,* r. 2.2–10–7(e) (1996)); Michael D. Larson, *Identifying, Measuring, and Treating Functional Obsolescence in an Appraisal,* 10 J. PROP. TAX MGMT. 42, 44 (1999) (defining functional obsolescence). Functional obsolescence is caused by factors inherent to the property. IND. ADMIN. CODE tit. 50, r. 2.1–6–1 (codified in present form at *id.,* 2.2–1–29). It represents "either a physical element that buyers are unwilling to pay for or a deficiency that impairs the utility of a property when compared to a more modern replacement." *Freudenberg–NOK,* 715 N.E.2d at 1029 (citing Larson, *supra* at 44). Functional obsolescence "may be due to a poor floor plan, mechanical inadequacy or superadequacy, functional inadequacy or superadequacy due to size, style, age or other losses." IND. ADMIN. CODE tit. 50, r. 2.1–5–1. "Simply put,

functional obsolescence works as a penalty against the property's value." *Freudenberg–NOK,* 715 N.E.2d at 1029. The regulations provide some examples of causes of functional obsolescence. IND. ADMIN.CODE tit. 50, r. 2.1–5–1 (codified in present form at *id.,* 2.2–10–7(e)). Obsolescence is expressed in terms of a percentage reduction from the subject improvement's value; the obsolescence deduction can range from 0% to 95%. IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.,* 2.2–10–7(f) (1996)).

▆▆▆▆ As noted in *Clark v. State Board of Tax Commissioners,* the determination of obsolescence is a two-step inquiry. 694 N.E.2d at 1238. Causes of obsolescence must first be identified and then the amount of obsolescence must be quantified. *Id.* In *Clark,* the Court announced that, henceforth, the Court would not "consider taxpayer complaints concerning obsolescence in cases where the State Board holds a hearing concerning an assessment . . . unless the taxpayer has identified the causes of the alleged obsolescence and presented probative evidence that would support a quantification of obsolescence at the administrative level." 694 N.E.2d at 1241. Therefore, in advocating for an obsolescence adjustment, a taxpayer must first provide the State Board with probative evidence sufficient to establish a prima facie case as to the causes of obsolescence.[3] *See White Swan*

*Realty v. State Bd. of Tax Comm'rs,* 712 N.E.2d 555, 560 (Ind. Tax Ct.1999), *review denied.* "Where there is no cause of obsolescence, there is no obsolescence to quantify." *Lake County Trust v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1253, 1257 (Ind. Tax Ct.1998), *review denied.*

According to CRC, it "presented exhibits specifically pointing to the causes of obsolescence." (Pet'r Reply Br. at 1) (citing Exs. D & E). Exhibit D is an "Assessment Review and Analysis" for Parcel # 2 that was prepared by M. Drew Miller of Landmark Appraisals, Inc. (Landmark), CRC's taxpayer representative during the administrative proceedings. This Parcel # 2 Review contains four uncaptioned, color photographs of the subject improvements; three photographs represent exterior views and the fourth represents an interior view. It also contains a map showing the subject improvements' locations and the area near the subject improvements, with the subject improvements highlighted in yellow marker. On its seventh page, the Parcel # 2 Review states the following:

1) The subject property suffers from the following highlighted causes of obsolescence:

a) The facility has an inefficient floor plan, varying ceiling heights and a cut-up interior with a flat roof design on most of the building. All of these are a detriment to the struc-

---

**3.** A prima facie case is a case in which the evidence is sufficient to establish a given fact and which if not contradicted remains sufficient to establish that fact. *Damon Corp. v. State Bd. of Tax Comm'rs,* 738 N.E.2d 1102, 1106 (Ind. Tax Ct.2000) (citation omitted). *Clark,* 694 N.E.2d at 1241, requires the taxpayer to present a prima facie case as to both the identification of causes and quantification of obsolescence. Once the taxpayer carries its burden of production with respect to the identification and quantification of obsolescence, the burden of production shifts to the

State Board to rebut the taxpayer's evidence and justify its decision with substantial evidence. *See Damon,* 738 N.E.2d at 1106. The Supreme Court of Oregon aptly expressed this burden shifting process as follows: "As in ordinary civil litigation, when the party bearing the burden of [persuasion] introduces sufficient evidence to make out a prima facie showing on a particular phase of his case, the burden of going forward shifts to his opponent." *Publishers Paper Co. v. Department of Revenue,* 270 Or. 737, 530 P.2d 88, 92 (1974).

ture and detract from the value of the property as the ideal facility would be square to rectangular in shape with wide open bays and one ceiling height at least 18'.

b) Due to the inefficiency of the building and lack of insulation, the heat distribution of the structure is substandard.

c) The majority of this structure was constructed over 40 years ago. Building code has changed substantially since the original construction, which leaves this structure not conforming to current electrical, plumbing and handicap accessibility codes.

d) The structure was originally constructed for manufacturing and warehouse purposes 40 years ago. Since that time, there have been several different occupants in the building with each making some modifications to the structure in order for the utility of the building to better serve the occupants['] needs. Currently there is an excess amount of office space as only ⅛ of the office is used.

The ninth page of the Parcel # 2 Review is a copy of the State Board's obsolescence depreciation rules, with various causes of functional and economic obsolescence highlighted in yellow marker.

Exhibit E is an "Assessment Review and Analysis" of Parcel # 13, which was also prepared by Miller. Page four of the Parcel # 13 Review is titled *"ERRORS IN THE ELKHART COUNTY BOR'S DETERMINATION."* It states in relevant part:

The County's determination failed to adequately consider the loss in value due to obsolescence. The subject property suffers a loss in value due to functional and economic causes which requires the application of obsolescence depreciation. The subject[ ] building was constructed in 1950, a time when the concern for heating and cooling efficiencies were of minimal importance. This is best observed by the building's lack of thermal pane windows and minimal insulation. All windows are of single pane glass. The add-on type of construction has created an excessive amount of interior walls with low and varying ceiling heights as well as a varying high maintenance roofline. Modern buildings are more square in shape, have uniform ceiling heights with fewer interior columns and partitions. The finished areas of modern office buildings are designed to facilitate a network of computers and phone lines. Because the subject[ ] building was built with little or no concern for these features and was built over a period of time with various materials and add-on construction, it is at an economic disadvantage in the marketplace, incurring higher utility, maintenance, material handling costs and labor costs.

The fifth page of the Parcel # 13 Review is a copy of the State Board's obsolescence depreciation rules, with various causes of functional and economic obsolescence highlighted in yellow marker. A map of the subject building, also highlighted in yellow marker, and its surrounding area is provided on page six of the Parcel # 13 Review.

CRC also argues that county officials agreed with the State Board's original Final Determination, with respect to the obsolescence adjustment granted to the subject improvements. According to CRC, "This agreement as to obsolescence amounts to agreement that the property suffers from causes of obsolescence." (Pet'r Reply Br. at 2) (citing *Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714

N.E.2d 329 (Ind. Tax Ct.1999)). This agreement, CRC maintains, is further "supported by the fact that the State Board applied obsolescence for the tax year at issue previously." (Pet'r Reply Br. at 2). CRC adds that, "One cannot imagine evidence more probative in the adversary administrative proceeding than agreement of the parties." (Reply Br. at 2.)

## A. Reviews

▉▉ Neither the Parcel # 2 Review nor the Parcel # 13 Review is probative as to the identification of causes of obsolescence. Probative evidence is evidence that tends to prove or disprove a point in issue. *Sterling Mgmt.–Orchard Ridge Apartments v. State Board of Tax Commissioners*, 730 N.E.2d 828, 833 (Ind. Tax Ct.2000). The photographs in the Parcel # 2 Review lack descriptive captions, and CRC does not explain how the photographs identify causes of obsolescence in the buildings shown. Thus, they lack probative value. *See Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999). The highlighted maps in both reviews illustrate the general outlines of the subject improvements, but they also lack any explanations. The maps are non-probative, because they provide the Court with no insights with respect to any causes of obsolescence allegedly suffered by the subject improvements. *Cf. Sterling–Mgmt.*, 730 N.E.2d at 839 (concluding that highlighted marks on grade specification table were "no more than unsupported conclusory statements" that were not probative as to grade). Similarly, the highlighted pages from the State Board's depreciation rules, standing alone, are nothing more than unsupported allegations that do not qualify as probative evidence. *Cf. id. See also Herb v. State Bd.*

*of Tax Comm'rs*, 656 N.E.2d 890, 893 (Ind. Tax Ct.1995) ("Allegations, unsupported by factual evidence, remain mere allegations.").

Page seven of the Parcel # 2 Review states that the subject improvements suffer from the highlighted causes of obsolescence. Essentially, page seven is a list of conclusory statements. Sub-section "a" claims that the floor plans are "inefficient," have varying ceiling heights, a "cut-up" interior and a "flat roof design"; according to CRC, these alleged deficiencies "detract from the value" of the improvements when considering the features of an "ideal facility."[4] (Joint Ex. D at 7.) CRC provides no explanation as to how the existing features of the improvements on Parcel # 2 actually detract from the buildings' values. Similarly, subsection "b" states that the subject buildings are inefficient and lack insulation; thus, their heat distributions are "substandard." (Joint Ex. D at 7.) No explanation as to how the buildings' insulation or heat distribution systems impact their operating costs is given. Further, stating (as subsection "c" does) that the improvements do not meet current building codes does not inform the State Board or the Court as to the current code requirements, how the subject improvements fail to meet those requirements or how the deviations cause the subject improvements to lose value. Finally, subsection "d" asserts that the improvements have been modified over the years and that only one-third of the office space was being used. The modifications are not explained. Assuming the building has been modified over the years, CRC does not indicate how the modifications resulted in a loss in value to the improvements. Likewise, that only one-third of the office space is being used

---

**4.** Although the Parcel # 2 Review on page seven discusses the alleged deficiencies of a single facility, the Court assumes that it is referencing both improvements located on the parcel and will therefore refer to both improvements in its analysis.

does not necessarily mean that the subject improvement has suffered a loss in value.

The Parcel # 13 Review contains similar, conclusory statements. According to the Parcel # 13 Review, the subject improvement suffered a loss in value due to, among other things, minimal insulation and inefficient add-on construction. These features, CRC maintains, put the subject improvement "at an economic disadvantage in the marketplace, incurring higher utility, maintenance, material handling costs and labor costs." (Joint Ex. E at 4.) These alleged deficiencies may in fact cause a loss in value of the subject improvement. However, CRC cannot merely state that these features are present and cause a loss in value without explaining how or why the subject buildings' values are negatively impacted by the alleged deficiencies.

The Court addressed the need for identification of obsolescence in *Clark v. State Board of Tax Commissioners,* 742 N.E.2d 46 (Ind. Tax Ct.2001) (*Clark II*), *pet. for review filed* Feb. 7, 2001. The issue in *Clark II* was whether the taxpayer identified causes of economic obsolescence.[5] In *Clark II*, the taxpayer alleged in part that a high tenant turnover rate and excessive maintenance costs caused his apartment units, which were rented primarily to college students, to suffer a loss in value. 742 N.E.2d at 50–51. The taxpayer's evidence consisted of one witness's trial testimony and his written review. The review stated that students tend to sign shorter leases than non-student tenants and subject apartments to a degree of wear and tear higher than that typical of non-student tenants. This, the witness claimed, led to higher than normal administrative costs and maintenance costs for the tax-

payer's apartment units. The review cited no authority to support these contentions but did include an income statement for the units. At trial, the witness opined that the units' high turnover rate for renters detracted from cash flow but that the taxpayer was not necessarily losing money. The Court concluded that the taxpayer had failed to submit probative evidence identifying causes of economic obsolescence. *Id.* at 51. The Court observed that the witness's review and trial testimony were nothing but conclusory observations. *Id.* Moreover, the Court concluded that, assuming the units had a seventy percent annual turnover rate (as claimed by the witness), the taxpayer did not "submit evidence showing that this alleged fact causes overly burdensome administrative costs." *Id.* In addition, the Court found the taxpayer's income statement to be non-probative as to obsolescence "because it did not compare the subject units' rental income, security deposit income and maintenance expenses with those of other properties with non-student populations." *Id.* at 51–52. Essentially, the Court held that the taxpayer's presentation of evidence without showing how that evidence demonstrates that the units suffered a loss in value was not probative evidence.

*Damon Corp. v. State Board of Tax Commissioners,* 738 N.E.2d 1102 (Ind. Tax Ct.2000) also concerned the identification economic obsolescence. In *Damon Corp.,* the taxpayer argued that its property suffered from "low market acceptability and low desirability" as evidenced by the following: (1) its payment of less than the true tax value for the property; (2) the vacancy of the property for over a year prior to the taxpayer's purchase of it; and (3) the fact that the taxpayer's building

5. "Economic obsolescence is caused by factors external to the property, such as inharmonious property uses." Ind. Admin. Code tit.

50, r. 2.1–5–1 (1992) (codified in present form at *id.,* r. 2.2–1–24 & –10–7(e) (1996)).

was under construction at the time of purchase. *Damon Corp.*, 738 N.E.2d at 1108. The Court first noted that the taxpayer cited no authority showing that low market acceptability and low desirability indicate the presence of economic obsolescence. *Id.* Thus, the taxpayer's claim was a mere allegation that did not qualify as probative evidence identifying causes of obsolescence. *Id.* The Court did analyze each of the taxpayer's three claims, in order to "determine if they show a loss in value that would indicate that obsolescence should be applied." *Id.* None of the taxpayer's assertions, however, were found to be probative evidence as to causes of obsolescence, because the taxpayer's evidence failed to show that the property suffered a loss in value. *Id.* at 1109–10. *See also Pedcor Invs. 1990 XIII, L.P. v. State Bd. of Tax Comm'rs*, 715 N.E.2d 432, 438 (Ind. Tax Ct.1999) ("Without a loss of value, there can be no economic obsolescence.").

▬ In the present case, it appears, as the State Board noted, that CRC's taxpayer representative "attempted to use a replacement facility comparison to prove obsolescence by referring to [and referencing of] items such as plant design, proportion of space, and product-handling cost caused by the floor plan." (Joint Ex. B at 27, 53–54.) In *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 212–13 (Ind. Tax Ct.2000), *pet. for review filed* Dec. 22, 2000, the Court did note that the cost approach is usually used in measuring functional obsolescence and that the cost approach is concerned with the subject improvement's cost of replacement and its cost of reproduction. However, in reality CRC did little more than list factors that cause improvements to possibly suffer losses in value. In its brief, the State Board correctly asserts that the identification of causes of functional obsolescence "requires more than randomly naming fac-

tors." (Resp't Br. at 5.) Rather, as the Court's decisions in *Clark* II and *Damon Corp.* illustrate, the taxpayer must explain how the purported causes of obsolescence cause the subject improvements to suffer losses in value. Neither the Parcel # 2 Review nor the Parcel # 13 Review meets this standard. They merely identify possible causes of obsolescence; they fail to *explain*, other then in conclusory fashion, how the alleged causes result in losses in value to the subject improvements. Therefore, the reviews lack probative value.

## B. Agreements

▬ CRC believes that because the State Board's original Final Determinations assigned obsolescence adjustments to the subject improvements and because at the remand hearing local assessing officials thought those adjustments were adequate, there is agreement as to causes of obsolescence. Therefore, CRC posits that identification of functional obsolescence is not an issue in this case and that only the quantification of the agreed upon causes serves as a bone of contention between the parties. CRC is incorrect.

At the remand hearing, Miller pronounced his agreement with the prior Final Determinations as to the existence of obsolescence in the subject improvements. (Joint Exs. A, B at 12, 38.) Moreover, local assessing officials at the remand hearing opined that the obsolescence adjustments granted by the State Board in its original Final Determinations were adequate. (Joint. Exs. A, B at 13, 39.) However, neither the prior Final Determinations nor the agreement between Miller and the local assessing officials were probative as to whether the subject improvements suffered from causes of functional obsolescence.

The Court's Remand Order controlled the conduct of the remand proceedings. *See* IND.CODE ANN. § 6–1.1–15–8(a) (West 2000); *Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Comm'rs*, 550 N.E.2d 850, 852 (Ind. Tax Ct.1990). In the Remand Order, the Court expressly determined that the record was "bereft of any probative evidence which supports either the causes or quantification of functional obsolescence, either that claimed by [CRC] or that granted by the [State Board] in its final determination." (Remand Order at 1.) According to the Court, nothing in the record applied the alleged causes of functional obsolescence to the subject improvements. (Remand Order at 1.) Therefore, the Court remanded the "entire issue of functional obsolescence" to the State Board, with the State Board's proceedings on remand to comport with the Court's guidelines set out in the *Clark* case. (Remand Order at 2.) Further, the State Board was to consider only the issue of functional obsolescence. (Remand Order at 2.)

The Court's Remand Order wiped the slate clean with respect to functional obsolescence, due to the lack of any probative evidence tending to show that the subject improvements suffered from causes of functional obsolescence. In other words, the Court effectively declared the State Board's original Final Determinations, as regards the application of obsolescence adjustments to the subject improvements, null and void. Miller's agreement with the obsolescence adjustments granted was meaningless, because he agreed with something that was unsupported by the record and that was no longer in effect. For this very same reason, the local assessing officials' agreement with the prior obsolescence adjustments was meaningless.

In reviewing assessments as part of the Form 131 review process, the State Board is permitted to correct "any errors which may have been made" in the taxpayer's assessment. IND.CODE ANN. § 6–1.1–15–4(a) (West 2000); *Castello v. State Bd. of Tax Comm'rs*, 638 N.E.2d 1362, 1364 (Ind. Tax Ct.1994). Thus, the State Board is free to correct the assessment errors that it finds, regardless of the views of local assessing officials with respect to those errors. CRC cannot reasonably argue that the State Board is bound by the mistakes of local assessing officials, merely because the taxpayer and the local officials agree with the mistakes. After all, the Indiana General Assembly has charged the State Board with seeing that "all property assessments are made in the manner provided by law." IND.CODE ANN. § 6–1.1–35 1(3) (2000).

CRC mistakenly argues that this Court's opinion in *Heart City Chrysler v. State Board of Tax Commissioners*, 714 N.E.2d 329 (Ind. Tax Ct.1999) supports its position. In *Heart City Chrysler*, the State Board had determined that the subject improvements suffered obsolescence; consequently, this Court reasoned that the "State Board must have concluded that the subject improvements suffered from causes" of obsolescence. 714 N.E.2d at 333 n. 13. *Accord Phelps Dodge v. State Bd. of Tax Comm'rs*, 705 N.E.2d 1099, 1102–03 (Ind. Tax Ct.1999) (concluding that State Board and taxpayer agreed on the causes of obsolescence, where "both parties agree[ed] that the small bays and limited use caused[ed] obsolescence in the subject improvements"), *review denied.* The agreement at issue in *Heart City Chrysler* was that between the State Board and the taxpayer, not that between the taxpayer and local assessing officials. Moreover, as explained *supra,* in the present case the Court essentially declared the original final determinations, with respect

to the obsolescence issue, null and void. Unlike in *Heart City Chrysler*, here the new final determinations granted no obsolescence adjustments. Therefore, the final determinations do not imply the existence of any "agreement" as to the causes of obsolescence in the subject improvements.

CRC advocates a general rule that when parties in an adversarial proceeding agree upon items, those items no longer represent issues open for consideration. (Pet'r Reply Br. at 2.) However, this Court's prior decisions do not stand for this proposition. Rather, the agreements recognized by the Court are those represented by the State Board's grants of obsolescence adjustments in its Final Determinations. The logic is simple. In these prior cases, the Court found that because the State Board in fact granted some obsolescence, it must have first identified causes of obsolescence in the subject improvements.

Here, the State Board found after remand that CRC failed to identify causes of functional obsolescence in the subject improvements. Therefore, there is no agreement between the State Board and CRC for the Court to recognize. CRC incorrectly asserts that its agreement with local officials as to the formally recognized causes of obsolescence by the State Board shows that the subject improvements suffered from causes of functional obsolescence. The agreements are not probative as to whether the subject improvements suffered from causes of obsolescence.

## CONCLUSION

As the State Board observed, "It is incumbent on the taxpayer to establish a link between the evidence and the loss of value due to [functional] obsolescence." (Joint Ex. B at 23, 49.) In the present case, CRC's exhibits and the testimony of its taxpayer representative lack probative value. Thus, CRC's evidence shows no loss in value suffered by the subject improvements due to factors inherent in the properties. Without having identified a loss in value, CRC has not made a prima facie case that adjustments for functional obsolescence should have been applied to its properties. For the aforementioned reasons, the Court AFFIRMS the State Board's Final Determinations in this matter.